CHRISTIAN ANDERSON, APPELLEE, v. HENRY ALTSCHULER, APPELLANT.

FILED JANUARY 22, 1934. No. 28629.

*Roy B. Ford* and *Dowling & Thielen,* for appellant.

*Dressler & Neely, contra.*

Heard before GOOD and EBERLY, JJ., and MESSMORE, RAPER and YEAGER, District Judges.

MESSMORE, District Judge.

This is an appeal from the district court for Madison county, wherein appellee, plaintiff below, obtained a judg-

ment against appellant, defendant below, for damages growing out of an automobile accident which occurred on the state highway known as numbers 20 and 81, in Pierce county, in September, 1931.

Appellee, in his petition, alleged that at the time of the accident in question he was 22 years of age and sued for injuries to his person and property; alleged that he was driving west on said highway in a careful manner on his right-hand side of the road and at a reasonable and proper rate of speed; that appellant was traveling east on said highway at a reckless and excessive rate of speed and on appellant's left-hand side of said highway; that appellee, noting the position of appellant's car, believed appellant intended to turn into a filling station on the north side of said highway and about opposite the place where the cars collided; that appellee thereupon retarded the speed of his car in order to permit appellant to turn into said station, as appellee anticipated he would do, but which appellant did not do but continued to drive east on said highway on the wrong or north side of the same, which was the side appellee in his lawful right was obliged to drive on; that appellant drove his car eastward on said highway at a speed of 45 to 50 miles an hour and drove his car directly head-on and into appellee's car; further, that the injuries to his person, which were permanent in character, and the damage to his automobile were caused by the negligent operation of appellant's car by appellant and that said negligence of appellant was the sole cause of the accident.

Appellant, in his answer, admitted the occurrence of the collision at the time stated; alleged further that any damage sustained by appellee to his person or property was the direct and proximate result of his own negligence.

By cross-petition appellant alleged that he was driving his car eastward on said highway and appellee westward; that appellee drove his said car in a grossly careless and reckless manner at a speed of 60 to 65 miles an hour,

first on the left side of the road, then on the right side, and then back on the left or south side thereof, and then crashed almost head-on with appellant's car, throwing appellant forward; that appellee was guilty of further acts of negligence in the operation of his automobile at the time and place in question by not having the same under control, without maintaining the proper lookout, without having said car equipped with proper brakes and braking appliances and failing to use such braking appliances, such as appellant did have, and that such acts of negligence were the direct and proximate cause of the injuries sustained by appellee, if any, and of the damage to appellee's property.

Appellee filed a general denial in reply.

The principal assignments of error relied upon by appellant for a reversal of this action are that the verdict is not sustained by the evidence and is contrary to and against the clear weight of the evidence, and that the negligence of appellant, if any, is as a matter of law less than gross in comparison with the negligent acts of appellee, which as a matter of law are greater than slight in comparison with any negligent acts of appellant.

The evidence discloses that appellee had been in Norfolk on the day of the accident and had left there about 3:15 or 3:30 in the afternoon, arriving at the scene of the collision about 4:30 p. m., the distance from Norfolk to the scene of the collision being about 28 or 30 miles; that appellant and his 3 companions had been to Minnesota on a fishing trip and were returning therefrom, having left the fishing ground about 4 a. m. of the day of the accident and having driven some 400 odd miles to the place of collision.

A blue print drawn to scale, properly admitted, disclosed without much question the true situation and the lay of the ground at the point of collision. Measurements of distances were submitted by competent evidence. The exact degree of the grade of the hill was in dispute, but it figured about 5 per cent.

An examination of the blue print in evidence shows that the position of the Hudson car, owned and driven by appellant, at the time of impact was about 27 feet west of the east point of the west driveway into the filling station and approximately 12½ feet south of the approximate margin of travel indicated on the blue print on the north side of the highway, where the left front wheel of the Hudson, designated by the letter A on the blue print, rested immediately after the impact. Slightly to the south of the letter A and a trifle to the east appears the capital letter B on the blue print, denoting the point where the left front spring clip of the Hudson rested. These two points were pointed out by the eyewitness Schuttler and his son. Assuming these measurements to be accurate, as portrayed by the scale on the blue print, that is, an inch equals 20 feet, the physical facts then show that at the time of impact the Ford car, owned and driven by appellee, had he held the right side of the road, as indicated in his testimony, could have passed without collision.

Appellee's statement as to his rate of speed in coming down the hill was that he was then traveling about 35 to 40 miles an hour. The pictures of the automobiles, several of which were introduced and received in evidence, disclose that appellee's automobile was struck on the right side, the radiator smashed back in the position of the windshield, the right lamp broken, the right fender turned, the right front wheel turned, and glass broken out of the windshield on the right side thereof.

The Hudson car of appellant was struck on the left front side, demolishing the left lamp and fender, and the radiator was demolished to such an extent that it was pushed back toward the windshield and to the right, and the left front fender torn from the running board and the left rear fender bent in towards the body of the car.

The evidence without dispute discloses that the Ford roadster immediately after the impact whirled around so that its front pointed east and was immediately in

front of the Hudson. Appellee's explanation of his driving was to the effect that he believed appellant intended to turn into the filling station and that he was driving on the wrong side of the road.

There was one eyewitness to the accident called by both appellee and appellant, by the name of H. W. Schuttler, who stated that the Ford was coming down the hill at the rate of 60 to 65 miles an hour. The record does not disclose the rate of speed of either car at the time of impact. This witness further testified that both cars seemed to turn to the right or south of the road at the time of impact; that there was room, had appellee held his own side of the road, to have passed on the north side of the road without damage to appellant and with a clearance of 20 feet; that a truck had passed in such a manner with the two cars standing in their relative positions immediately after the accident.

Appellant testified that appellee, coming down the grade at a high rate of speed and when about 200 feet distant from the point of impact, had started towards the right of the highway, and the evidence supports his contention in so far as the eyewitness Schuttler was able to determine this fact to be true; his testimony being that appellee did start towards the south side of the highway at a point about 200 feet distant from the place of impact.

Appellee further testified that he did not believe that appellant was going to turn his car into the filling station and that appellee did not have time to turn his car far enough to the right to avoid the impact; that he, appellee, was on the north half of the road and that he stayed on his half of the road. The physical facts, as related in this opinion, would indicate that this contention is correct.

Elmer Scherer, called by appellant, testified that he was at the scene of the accident shortly after it happened near the filling station; that he saw an automobile going around the curve as he entered highway 81 and 20 in his Pontiac automobile and that he was distant about 75 feet from

this automobile at that time; that it continued on west of him; that it was a Ford roadster and traveling at the rate of about 60 miles an hour when he first observed it; that the Ford passed out of his sight and he saw it next immediately after the impact; that the witness at that time was at the top of the hill, a distance of 1,575 feet or more than a quarter of a mile east of the point of collision; that by the time the witness reached the bottom of the hill the occupants of the two cars involved in the collision were out of their respective cars. This testimony stands undisputed and uncontradicted and a computation of the distances traveled by both cars corroborates almost to a mathematical certainty the statement of Scherer and other evidence disclosed by the record that appellee was traveling 60 miles an hour down the hill just prior to the time of collision.

Several other witnesses were called, one, who did not see the accident, a son of the eyewitness Schuttler, but who corroborated his father as to the relative positions of the automobiles in question after the accident. The medical testimony is undisputed.

The physical facts as disclosed by the record show that the negligence of appellee was more than slight in comparison with the negligence of appellant. This being true, a recovery by appellee would be barred and the comparative negligence rule would not apply. We are cognizant of appellee's contention that the question of speed, in so far as it goes to negligence, is a question for the jury, but no reasonable mind can conclude other than that the evidence introduced and received in this case shows appellee was traveling at an excessive rate of speed and the evidence is overwhelming that he was going at least 60 miles an hour. The uncontradicted physical facts corroborate the testimony of the eyewitness Schuttler and of the witness Scherer.

While the rule is well settled and is the statutory law of Nebraska that one who has been damaged through the negligence of another may recover, even though he him-

self is guilty of contributory negligence, provided his own negligence is slight and the negligence of the other gross in comparison therewith, it is equally true that appellant may not be held if, as a matter of law, the weight of the evidence shows appellee's negligence to have been in any degree greater than slight, or if the weight of the evidence shows the negligence of appellant to be any less than gross in comparison with slight negligence on the part of appellee. We believe that the physical facts and the evidence warrant this conclusion.

Appellee's testimony disclosed that he was proceeding on his own side of the road and on cross-examination he stated that he intended to hold his side of the road. Therefore, taking all the facts into consideration, both physical and stated, "if he does nothing for his own security he is negligent, and if the physical facts leave no doubt so that reasonable minds would not differ in that he either proceeded recklessly or failed without reasonable excuse to take the precautions which the conditions indicate were available to him, he is as a matter of law guilty of negligence more than slight, which under our rule of comparative negligence bars a recovery" (*Eggeling v. Chicago, R. I. & P. R. Co.*, 119 Neb. 229); this in the event that he was approaching on his own or right side of the road, as he stated.

It is the settled rule in this state that, where different minds may draw different inferences from the same state of facts, as to whether such facts establish negligence, it is a proper question for the jury, and not for the court; but that rule is subject to the qualification that the inference of negligence must be a reasonable one. Where it is impossible to infer negligence from the established facts without reasoning irrationally, and contrary to common sense and the experience of the average man, it is not a question for the jury, and the court should direct a verdict for the defendant. *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb. 642; *Kelly v. Gagnon*, 121 Neb. 113.

"Where it is disclosed in an action for personal injuries that plaintiff was guilty of contributory negligence, he

cannot recover unless his negligence is shown to be slight in comparison with that of the defendant." *Peterson v. Millnitz,* 119 Neb. 365.

When the facts in evidence, in an action for damages by reason of alleged negligence on the part of a defendant, clearly show contributory negligence on the part of the party injured, to such an extent that no reasonable mind can believe that such contributory negligence is slight and the negligence, if any, of defendant gross in comparison therewith, it is error, by an instruction to the jury, to authorize the jury to make such comparison and base their verdict thereon. *Johnson v. City of Omaha,* 108 Neb. 481.

"Where the facts show beyond reasonable dispute that the plaintiff's negligence was more than slight, as compared with the negligence of the defendant, it is the province of the court to direct a verdict for the defendant." *Allen v. Omaha & S. I. R. Co.,* 115 Neb. 221.

Many other decisions of like import are cited by appellant in support of his contention for a reversal of this case. Some of them cited by the court in this opinion have to do with common carriers, but the rule in reference to negligence in respect to which it is interpreted in this opinion is the same in automobile cases. One distinction that may be drawn is that the elevator case cited by appellant, *Sodomka v. Cudahy Packing Co.,* 101 Neb. 446, is not pertinent to the issue in this case because the degree of care required in an elevator case is higher than required of automobile drivers in the operation of their automobiles.

In view of all the evidence and the physical facts in this case, after a careful reading and analysis of the bill of exceptions, and in view of the decisions herein cited, we conclude that the judgment of the lower court should be set aside and the action reversed and dismissed.

REVERSED AND DISMISSED.