HAROLD BUICK, APPELLEE, V. WELDON E. STOEHR ET AL., APPELLANTS.

111 N. W. 2d 391

Filed October 27, 1961.   No. 34981.

*Fraser, Wenstrand, Stryker, Marshall & Veach,* for appellants.

*Silverman & Silverman* and *Richard A. O'Connor,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an action to recover damages to person and property sustained in a collision between a 1950 Studebaker automobile driven by the plaintiff and appellee Harold Buick, and a 1959 Plymouth automobile driven by the defendant Weldon E. Stoehr and owned jointly by him and his father Elmer L. Stoehr, who is also a defendant, both of whom are appellants here.

The petition alleged that the defendants' car was operated in a negligent manner, and at an excessive rate of speed considering the existing circumstances; that the driver failed to keep a proper lookout, failed to have the car under proper control, or to stop his car, or alter or divert its course; and that he drove his car on the plaintiff's right side of the road instead of his own right side.

The answer admitted the accident; denied the negligence asserted by plaintiff; and alleged that the accident and resulting injuries and damage sustained by plaintiff were through no fault of defendants, but were caused solely by the negligence of plaintiff which negligence was more than slight and directly contributed to and caused the accident.

A cross-petition was also filed by defendants which claimed negligence on the part of the plaintiff in that he failed to have his vehicle under proper control or to use the instrumentalities in his control to avoid the accident, in driving on his left-hand side of the road

into defendant's lane of travel, and in failing to see defendant's car or taking action to avoid colliding therewith. The reply was a general denial.

A trial was had before a jury which found for the plaintiff on his cause of action against both defendants and assessed his damages at $27,500, and further found in favor of plaintiff on the defendants' cross-petition.

The defendants moved for a directed verdict at the conclusion of plaintiff's case and again at the close of all the evidence, which motions were overruled, and after verdict moved for judgment notwithstanding the verdict and for a new trial. These motions being overruled the defendants appealed to this court.

They assign as errors the court below overruling the motions for a directed verdict at the conclusion of the plaintiff's case and at the conclusion of all the evidence; the overruling of defendants' motion for judgment notwithstanding the verdict; and that the verdict and judgment were contrary to law and contrary to and against the weight of the evidence. Other assignments were made which, in view of our decision, will not be necessary to discuss.

The disposition of the case requires us to consider carefully the evidence concerning the collision. In discussing it when we speak of the defendant, we refer to the defendant Weldon E. Stoehr, he being the only defendant present at the time of the accident.

The collision occurred on Saturday, September 5, 1959, at approximately 1:15 p.m. It occurred on what is known as the Cedar Creek Road about 4 miles west of Plattsmouth, Nebraska. Plaintiff had been fishing at what is called Four Mile Creek about a half mile west of the scene of the accident. He was returning from fishing and was driving easterly on this road which runs east and west. The road was surfaced with gravel and loose rock. The traveled portion of the road was 22 feet wide. The terrain of the country was rolling. The collision occurred at an intersection formed by a county

road coming into the Cedar Creek Road from the south and a private road leading off to the north at the same point. Prior to that day plaintiff had not been familiar with the road. The intersection mentioned was at the crest of a hill. The photographs introduced in evidence show that the road as it runs easterly falls away both to the east and west. The plaintiff was, immediately prior to the accident, driving up the hill from the west. It was not a very sharp hill from that direction. He was alone in his car. It was a clear, sunshiny day. The defendant Weldon E. Stoehr was approaching this hill from the east. In the car with him was one Kenneth Kizer.

Concerning the happening of the collision itself the evidence is as follows: Plaintiff Buick said that he had been fishing in Four Mile Creek; and that when he left there he went south a short distance, turned east on the Cedar Creek Road, and proceeded about a quarter of a mile prior to the accident. He approached the point of impact at 35 to 40 miles an hour. He drove on the south side, being his right side of the road; that after turning on the Cedar Creek Road he got his car up to 40 miles an hour and put it in overdrive. At the top of the hill he said he was traveling 30 to 35 miles an hour. Right at the crest of the hill he said, "all of a sudden, here is Stoehr's car, right in front of me, it seemed — appeared to be right in the middle of the road"; that at the time he was on his own side of the road; that the graveled portion of the road was 22 feet wide with shoulders of 4 feet on each side; and that after the accident he remembered nothing at the scene. Also he identified several photographs taken at the scene of the accident, most of which were admitted without objection. The rest of his testimony was with respect to his injuries, which were severe, and the treatment and expenses thereof.

On cross-examination he was questioned as to testimony in a deposition he had previously given. It was

taken on April 30, 1960. He admitted that in his deposition he had given the distance from where he turned onto the Cedar Creek Road to the accident as three-quarters of a mile; that at the time the road was pretty well deserted; that he had testified his car was going about 45 miles an hour when he put it in overdrive; that the car stayed in overdrive up to the time of the accident; and that in his deposition he had stated he did not "remember too well" how far the right side of his car was from the south edge of the road. When asked whether he maintained his car in the same general position on the road at all times he had answered, "I couldn't tell you for sure." When asked if he could tell the position of the car as it arrived at the crest of the hill with relation to the south edge of the road he then said, "Oh, I can't say for sure." To the question, "Well let me ask you this, did you at any time ever see this other vehicle that you had a collision with? Answer: I can remember just vaguely seeing it, that's all." His further cross-examination in regard to the testimony given previously is as follows: " 'Question: Would it be fair to say it was sort of a fleeting glimpse of the car? Answer: Well, I don't remember too well.' Do you recall that? A. I remember that, yes. Q. The very next question again: 'Question: When you observed what appeared to be a vehicle, have you any impression as to how far away from you it was? Answer: I couldn't tell for sure.' Do you recall that? A. Yes, I remember that. Q. Do you have any impression, Mr. Buick, as to what side of the hill or where with relation to the crest of this hill the collision itself took place? A. It took place right on top of the hill, right at the crest of the hill. Q. Do you know that or did you learn that, sir, from a photograph that you have looked at since? A. No, I know it, I have been out to the accident scene since then and a lot of things have come back to me. Q. Well, on page 19, line 5: 'Question: Do you really know anything about the collision itself, sir? Answer: I

don't remember anything about it.' Do you recall that? A. Yes, I remember that, at the time. Q. Now, on cross-examination your attorney, Mr. Silverman, on page 22, line 15, did he ask you this question: 'Question: When Mr. Fraser was asking you about the position of the car with relation to the south edge of the road, you recognize that the south edge as being to your right and your answer was, "Yes?" Answer: Yes.' So you understood that? A. Yes. Q. Now, lastly on page 23, Harold, do you remember my asking you this question: 'Question: Do you have any impression as to whether or not you, at any time, ever applied your brakes? Answer: I don't remember.' Do you recall that? A. I didn't have time to apply the brakes, I remember the question. 'Question: Or swerve? Answer: I don't remember whether I did or not.' Do you recall that? A. I remember the question, yes. Q. And that is your present impression today, isn't it? A. I didn't have time to. Q. But the point is, you didn't, did you? A. I didn't have time to swerve or hit the brakes or anything. Q. And yet you have no impression as to how far away from you this car was, is that correct? A. He was right on top of me when I seen him."

On redirect he reasserted that the first time he saw the Stoehr car it was directly in front of him and that he had no time to apply his brakes or sound his horn.

The only other witness on behalf of the plaintiff in regard to the accident itself was Thomas S. Solomon, the sheriff of Cass County. He stated that he went to the scene of the accident, getting there 10 or 15 minutes thereafter; that the 2 cars were still there; that the occupants, the drivers, were still there; and that he didn't talk to other witnesses who actually saw the accident aside from the occupants of the 2 cars. Harold Buick was in his car on the south side of the road headed east. He identified exhibit 16 as a photostat of diagram or drawing made by him of the scene of the accident on

the day of the accident. The diagram showed the width of the road to be 22 feet. He placed on the drawing the location of the skid marks of the Stoehr car which were 50 feet in length. He stated that the left wheel of the Stoehr car was close to the center of the road. He identified likewise a photograph of the scene of the accident upon which he had made markings and identified and explained these also. Both the diagram he made of the scene and the photograph thus identified were introduced in evidence by the plaintiff. The photograph was taken while the camera was pointed west and showed the road and both vehicles. They found the road at the scene of the accident to be 22 feet wide. The point of impact he found to be in the "dead center" of the road. It was marked on the surface of the road itself by a rod with a red flag thereon, which are shown in the photographs. The measurements were 11 feet from this point to the edge of the road on either side. The skid marks of the Stoehr car are shown thereon and marked by the sheriff. They also appear in the photographs. They approach very closely to the center of the road. They appear also on the sheriff's diagram as near the center of the road.

On cross-examination he stated that he talked to Harold Buick while he was still in the automobile; that he told him he did not see the Stoehr car coming; and that he talked to Weldon Stoehr at the scene of the accident and that he said as soon as he saw the plaintiff's car coming he let up on the foot feed and applied his brakes. He stated he saw the skid marks of the Stoehr car which were straight in line and the left wheel marks were in the middle of the intersection as near as could be determined. The witness stated that from the examination, measurements, and photographs taken at the scene of the accident he got the impression that the Buick (Studebaker) car was pulling to its right at the time of the accident. He thereafter identified other photographs previously admitted without objection as

having been taken by him; and stated that they reflected the conditions of the road and the location and condition of the cars of plaintiff and defendant at the time. He stated he had not measured from the left skid mark of defendant's car to the edge of the road. He stated further that the photograph of the Stoehr car appeared to him to show the impact to that car would be on the left front of the car and that the impact on the plaintiff's Studebaker was likewise on the left front of the car. He said also his report showed that he learned from the drivers that the cars were both going approximately 45 miles an hour.

Weldon Stoehr, one of the defendants, testified that he lived near Plattsmouth and he was an employee of Allied Chemical but did odd jobs at times; that the morning of the accident he had been chopping hay for a farmer; and that he had had his car with him. He took the car to Plattsmouth to a filling station to be serviced and cleaned up during the noon hour. Because he had to go back to work, Kenneth Kizer, an employee of the station, rode out with him intending to take the car back for service. Kizer sat with Stoehr in the front seat. They drove west on the Cedar Creek Road; that he had been driving at about 45 or 50 miles an hour and slowed up about one-half a mile east on an "S" curve and then resumed his prior speed; and that he was familiar with the road. It was a two-lane road. He said the hill where the accident occurred was not long but has a rather sharp peak; that at the bottom of the hill before the accident he was going 45 to 50 miles an hour; that he was traveling on the right side of the road; that he was sure he never drove except on the right side; that he was within 3 feet of the north curbline; that the car was about 6 feet wide; that he saw the Buick (Studebaker) car before the impact coming over the hill; that his car was about 100 feet down the hill when he first saw it; that then the plaintiff's car was to the east of the crest; that when he saw it he released the foot feed,

applied the brakes, and tried to swerve to the right; that due to the fact the wheels were locked the car didn't swerve; and that his brakes took hold. He said when he saw the Studebaker it was "right square" in the center of the road and if anything it was headed across the road into his lane. When he first saw it he could only see the front grille and bumper. When the brakes locked he went straight up the road. From the time he first saw it until the impact was only momentary. After the collision his car was turned completely around, continued past the point of impact, and stopped in the north ditch. He identified the position of both cars as shown in the photographic exhibits as correct. He said that Kizer who was riding in his car went for help; and that thereafter Ruben Jensen and Frank Bierl came to the scene of the accident. They remained there until the sheriff arrived. Defendant was only slightly bruised. One of the neighbors took him and Kizer to town. He recognized the plaintiff when he went over to talk to him as they were working at the same place, but they did not talk about the accident. He identified the skid marks on the photographs as his. He said he never went over the centerline of the road.

On cross-examination he stated the road was somewhat wider at the intersection than south of it; that the shoulder was 3 feet from a bank and that the 3 feet sloped to the bank; that his brakes were on and locked and the car skidded because of that; and that the road was steeper from the intersection east but was more level to the west. He was able to see the plaintiff's car about 100 feet away. There was a shallow ditch in the shoulder 6 inches to a foot deep. He said the photographs showing the flag set at the point of impact and the skid marks were approximately correct; that the skid marks were straight and went right up to and past the flag placed at the point of impact but didn't go into the south side of the road; and that there was an overhang of about 4 inches on his Plymouth.

On redirect examination he testified that when he saw the Studebaker car the imaginary centerline of the road would have split it; and that his car was damaged on the left front corner, mainly the left front wheel area, headlamps, and left front wheel.

Kenneth Kizer testified that he was in 1959 a member of the Air Force at Offutt Air Force Base but had a part-time job as a filling station attendant at Plattsmouth; that defendant Weldon Stoehr brought the Plymouth automobile to the station on the day of the accident involved in the suit around 12:45 p.m.; that he went with him to take him back to work, intending to bring back the Plymouth for service; that he knew Stoehr only from coming to the station; that the road at the scene of the accident was 22 feet wide; and that Stoehr was driving not over 50 miles an hour and probably slightly under that. He said the hill where the accident occurred was not too steep until the last few feet when it angled up rather sharply; that defendant was driving on his own side of the road; and that he was seated next to the right front door of the car. The Plymouth was driven approximately 2 to 2½ feet from the north edge of the road. He saw plaintiff's car from 100 feet to 125 feet away; that it appeared "right smack in the middle of the road"; and that when he saw it he wrapped his arms around his head and ducked his head down. He saw Stoehr apply the brakes and felt the car slide. It appeared to him the car went straight. After ducking his head he did not see the Studebaker again; that the point of impact was just east of the crest of the hill; that the Stoehr car was never across the centerline; that he went to call help and found Ruben Jensen who took him in his car to his house where he telephoned the sheriff and doctor; that when he came back with Jensen, Frank Bierl was already there; and that he thought he was back in 10 minutes. He stated the photographs then in evidence and shown to him correctly showed the scene of the accident and the condition of the cars. He

knew the cars were going to hit when he ducked his head and was glad they had a padded dash; that there were ditches along the north side of the road but he would say they were shallow; and that he looked at the skid marks of the Stoehr car on the road and that they went straight up the road. These skid marks appeared on the north side of the center of the road.

Frank Bierl stated he was a farmer living a half mile north of the intersection. He testified as follows: A party came to his home to have him call the doctor and sheriff, but his neighbor Jensen was already calling on the party line. He and his 12-year-old son then went to the scene of the accident. Stoehr's car was headed east on the north side of the road. The Studebaker was in the southwest part of the intersection headed northwest. The photographs in evidence show the position and condition of the cars and they reflected the true condition. Bierl left the scene of the accident at Stoehr's request to get in touch with Stoehr's father. He notified his wife in Plattsmouth to get in touch with Stoehr, Sr., and returned to the scene of the accident in 10 or 15 minutes. The sheriff was there when he arrived. He helped the sheriff take measurements by holding the end of a tapeline. He observed the condition of the road. The road going west from the intersection was good but from the west going east the county road maintainer had pulled the fresh ground up on the road and then had smoothed it back down, and that the traffic was swinging away from the graded road a little bit. That was on the south side of the road west of the intersection and he could tell no one had driven on it. The skid marks of Stoehr's car on the road were noticed by him but not measured. He said you could tell where he hit the brakes; that the skid marks were in a straight line; and that the flag was placed at the gouge marks in the road. He pointed them out on a photograph and stated the sheriff said the road was 22 feet wide when measured; that Stoehr's north skid

marks were 2 or 3 feet from the north edge of the road; and that his south skid marks were to the north of the flag set at the point of impact.

Reuben Jensen, a farmer, who lived a half mile north just west of Bierl's place testified that Kizer came to his place and phoned the doctor and sheriff. He went right over to the scene of the accident and saw the cars. He identified the photographs of the cars and said that they properly showed the damage to them and their correct position in the road. Stoehr's skid marks were north of the center of the road from east to west in pretty straight lines. Sheriff Solomon came later. Bierl and the sheriff measured the marks and he assisted. They were parallel to the road or perhaps headed a little bit northwesterly. The northern-most skid mark was about 3 feet from the north edge of the road except the road was a little wider at the point of impact; that the southern skid marks were just a little north of the center of the road; and that the skid marks were shown in the photographs shown to him and that they were to the north of the center of the road from his remembrance.

Plaintiff on rebuttal testified that there was not enough dirt scraped up on the south side of the road to cause him to divert his course away from it; and that he had noticed it, but it was fairly smooth and he had driven right over it.

This constitutes a summary of the evidence in this case having a bearing on the accident itself.

The following rules of law which have been laid down by this court are applicable to this case.

It is an elementary rule that credibility of witnesses and the weight to be given their testimony are for the jury's consideration. Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367.

"In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon

which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Palmer v. McDonald, 171 Neb. 727, 107 N. W. 2d 655. See, also, Jarosh v. Van Meter, 171 Neb. 61, 105 N. W. 2d 531.

"Where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination." Thomas v. Owens, 169 Neb. 369, 99 N. W. 2d 605. See, also, Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144.

"Where undisputed physical facts demonstrate that collision out of which injuries arose was not caused by negligence of defendant, the evidence is not sufficient to support a verdict for plaintiff." Hessler v. Bellamy, 128 Neb. 571, 259 N. W. 514. See, also, Anderson v. Altschuler, 125 Neb. 853, 252 N. W. 310.

In an action based on negligence to which the comparative negligence rule has application wherein the evidence shows beyond reasonable dispute that the plaintiff's negligence was more than slight in comparison with that of the defendant the action should be dismissed or a verdict directed. Hickman v. Parks Construction Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040; Dodds v. Omaha & C. B. St. Ry. Co., 104 Neb. 692, 178 N. W. 258.

"In a case where a motion was made at the close of all of the evidence for a directed verdict, which motion should have been sustained but was overruled and the case submitted to a jury which returned a verdict contrary to the motion, and thereafter a motion for a judgment notwithstanding the verdict is duly filed, it is the duty of the court to sustain the motion and render judgment in accordance with the motion for a directed verdict." Jarosh v. Van Meter, *supra*. See, also, Corbitt v. Omaha Transit Co., *supra*.

With these rules in mind we will briefly discuss the

evidence which has already been summarized at length. The plaintiff was driving east coming up over a hill. Defendant was proceeding west approaching the same hill. The ascent was more abrupt from the east. Both cars were proceeding at a legal rate of speed. There was testimony from which the jury could have believed that the defendant's speed was greater than he asserted but none that it was unlawful. The plaintiff called sheriff Solomon as his witness. He identified and plaintiff introduced a sketch made by him which showed the point of impact of the cars testified to by him. It was in the exact center of the road. The testimony of the sheriff and of two disinterested farmers was that the skid marks of the left wheels of the defendant's car were at most only up to this point. Most of the witnesses said they were to the north of this point which was shown to be the point of impact. The jury could however have properly inferred from the evidence that they came up to it. In that event they might have further inferred that the overhang of the defendant's car was on the south of the center of the road a matter of inches. This might have shown negligence on the part of the defendant driver. His skid marks showed he had applied his brakes and gone straight or, according to one witness, slightly towards the center of the road.. The driver Stoehr said his brakes locked. This was the testimony of Kizer also. There was no testimony to the contrary. Whether this was an additional fact which the jury might have considered and drawn conclusions as to what the defendant driver should have done is a question which we find unnecessary to decide.

This being a case where the comparative negligence rule applies it is necessary for us to determine what the plaintiff did, giving him every reasonable inference that the evidence might show.

His testimony on direct examination is that he came over the hill on his right side of the road. That "all of a sudden, here is Stoehr's car right in front of me,

it seemed—appeared to be right in the middle of the road." He testified several times that his car was on his own side of the road. He stated the graveled portion of this road was 22 feet wide. At the scene of the impact he remembers nothing further. The testimony of his witness, the sheriff, and the defendant's witnesses, Bierl and Jensen, show that the defendant's skid marks shown on the sheriff's plat and several photographic exhibits at the most came only up to the center of the road. It would appear that the plaintiff had plenty of room on the right side of the road to have safely gone past. Neither could the defendant's car have loomed up suddenly directly in front of him and at the same time in the middle of the road if his car was on its right side. The direct testimony of the plaintiff was seriously shaken on his cross-examination by his previous testimony as set out heretofore in the following respects: He had said he could not remember how far the right side of his car was from the south edge of the road; and that he could not tell for sure whether he had maintained his car in the same general direction or not. He couldn't say for sure the position of his car at the crest of the hill with relation to the south edge of the road and that he could only remember vaguely seeing the defendant's car. He didn't remember of applying his brakes or whether he swerved or not or that he didn't have time to swerve or hit the brakes. At the time of the trial he did not testify to the contrary with respect to his previous testimony except to assert he was on his right side of the road.

Both the defendant Stoehr and the other occupant Kizer testified the plaintiff's car was right in the middle of the road. The witness Kizer said he knew they were going to hit when he ducked his head. They both testified defendant applied his brakes at once. The oral testimony of the parties would seem to indicate that the plaintiff's car was also at least to some extent across the center of the road. There might have been enough

conflict to have allowed the jury to find differently if the oral testimony was alone considered. However, the physical facts of the skid marks of the defendant as established by plaintiff's proffered evidence only going to the center of the road seems positively to show the defendant over but a slight distance. This is established not only from the witnesses but from the photographs in evidence. These photographs also show the condition of the cars. They were both damaged by the impact on their left front. The defendant's car then went to its right and the plaintiff's to its right, each to or near the edge of the road. Examination of the photographs introduced in evidence showing the fronts of these cars discloses that the defendant's car sustained its damage more to the extreme left of its front than the plaintiff's car and that plaintiff's car at the front had most of the left side damaged and a considerable more area of the front badly crushed than the defendant's car. It seems inescapable that more of the front of the plaintiff's car was on his left side of the road considering all the evidence, including the point of impact as established by plaintiff's own witness and the condition of the cars from the photographs.

We find the defendant's car was over the center of the middle of the road and on its left side. This was established at the trial from the testimony and the physical facts shown. Under the circumstances disclosed by the record, it appears the plaintiff's car was driven over the hill and proceeded to the point of impact while a considerable portion of his car was on its wrong side of the road. Indeed it would seem established that more of his car was to the left of the center of the road than the defendant's car and that he did nothing towards controlling his car to avoid the accident either because he failed to do so or because of his car being on the wrong side of the road at the hill crest prevented him from so doing in the time given him to control it.

Under these circumstances he was himself guilty of contributory negligence and that such negligence was more than slight as compared to the negligence of the defendant, and that under the evidence presented no other reasonable conclusion could be reached by reasonable minds than that the plaintiff was guilty of contributory negligence more than slight as a matter of law and the motion to direct a verdict and, thereafter, to enter judgment notwithstanding the verdict should have been sustained.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendants notwithstanding the verdict dismissing the plaintiff's cause of action.

REVERSED AND REMANDED WITH DIRECTIONS.