IN RE ESTATE OF LEROY TICHOTA, DECEASED.
HENRY NIEMEYER, APPELLEE, V. ESTATE OF LEROY TICHOTA, DECEASED, ET AL., APPELLANTS.
212 N. W. 2d 557

Filed November 30, 1973. No. 38995.

Jewell, Otte & Gatz, for appellants.

Erickson, Sederstrom & Johnson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.
This is an action for damages for personal injuries

resulting from an automobile accident. The jury returned a verdict for the plaintiff in the sum of $170,000. The sole assignment of error is directed at the overruling of the defendant's motion for a directed verdict or dismissal, and in failing to sustain a motion for judgment notwithstanding the verdict. There is no issue as to the amount of the verdict. In the posture of this case, unless the defendant was entitled to a verdict as a matter of law, the judgment must be affirmed.

Henry Niemeyer, the 27-year-old plaintiff, spent the afternoon of February 1, 1970, in coyote hunting at a location southwest of Albion, Nebraska. There were approximately 15 vehicles occupied by hunters and engaged in the hunt. The weather was cold and dry, with a little snow along the fences. Plaintiff Niemeyer was driving a 1953 Chevrolet two-door automobile equipped with a two-way radio for communicating with other hunters on a citizen's band. Two other hunters were in his car with him.

Around 4 p.m., the plaintiff drove north along the eastern side of the section where the hunt was proceeding and then proceeded west on a graveled county road on the north side of the section. The road was hilly and the speed limit was 50 miles per hour. He drove over the crest of a hill and proceeded downhill to the west. At a point near the bottom of the hill, plaintiff passed the pickup truck of Dennis Sullivan, who was parked in the north ditch along the road waiting for the hunt to proceed. Plaintiff talked with Sullivan by radio. Sullivan told him that there were other vehicles ahead of him and there was no use going any further. Plaintiff then stopped and turned around at the bottom of the hill, some 50 to 60 feet beyond the Sullivan truck, and headed back up the hill to the east. The plaintiff was on his side of the road as he proceeded east. He shifted into second gear just before he reached the Sullivan truck, and waved as he passed.

Sullivan watched in his outside rearview mirror as

the plaintiff proceeded up the hill. Sullivan saw another car come over the crest of the hill from the east in the center of the road, followed by an extreme dust cloud. The car was later identified as that of the decedent Tichota. It was a 1967 Mercury. Sullivan estimated the Tichota car was going in excess of 65 miles per hour. Both cars were toward the center of the road but somewhat to the south of the center. He noticed that neither car was getting out of the road of the other and the accident occurred seconds after Sullivan first saw the Tichota car. As the cars collided "* * * the ends of both cars went up in the air and they seemed to come right down, just went up and down." Sullivan could not tell whether the Tichota car was skidding before the impact. He thought plaintiff was going approximately 35 miles per hour at the time of the collision. Sullivan observed the impact from a distance of approximately 80 feet.

The collision occurred approximately 140 feet west of the crest of the hill. The skid marks of the Tichota car began at the crest of the hill and continued to the point of the collision. At the commencement of the skid, the marks were exactly in the center of the road. There were no skid marks behind plaintiff's car.

The width of the traveled portion of the road varied. It was 21 feet at the crest of the hill where the skid marks began. It was 19 feet 6 inches immediately east of the impact area and 20 feet immediately west of the impact area. The width was not measured at the point of impact. The highway patrolman also made other measurements of the cars following the accident. From the right rear of the plaintiff's car to the south edge of the road was 3 feet 8 inches and from the left rear of the plaintiff's car to the north side of the road was 10 feet 6 inches. The right front tire of plaintiff's car was 6 feet from the south edge of the road. The left front tire of the Tichota car was 7 feet from the south

edge of the road, and the right front of the Tichota car was 8 feet 6 inches from the north edge of the road. At impact the rear tires slid 3 to 4 inches north, but not completely off the skid marks.

A mechanical engineer, qualified as an expert witness in accident reconstruction, performed various tests and calculations, based on stipulated weights of cars and degree of incline, and proceeded on the basic assumption that plaintiff Niemeyer's car was going 35 miles per hour at the time of the collision. In his opinion the speed of the Tichota car as it commenced to skid was 55.8 miles per hour, and at the time of collision the speed of the Tichota car was 31.6 miles per hour. The defendants' expert witness, also a mechanical engineer, testified that those calculations were not substantially different than his own. The expert witnesses agreed that under the formulas used, if plaintiff's speed was greater, the speed of the Tichota car would also be greater, and that if plaintiff's speed were less, the speed of the Tichota car would also be less.

As the result of the accident here, Tichota and the three passengers in his car died. Two passengers in plaintiff Niemeyer's car were also killed. The plaintiff himself sustained very severe injuries resulting in both mental and physical impairment. He was unable to testify. Thus, Dennis Sullivan, who saw the collision in the rearview mirror of his pickup truck, was the sole eyewitness.

There is no issue as to the amount of the verdict. The only issue on this appeal is whether the facts of this accident require a verdict for the defendant as a matter of law or whether the issues were properly submitted to the jury under the comparative negligence statute.

At common law, if the plaintiff was guilty of any negligence, however slight, which contributed to cause his injury, that contributory negligence barred his recovery. As a means of changing the harshness and

rigidity of the old common law rule, the doctrine of comparative negligence or of relative fault has developed. Nebraska adopted its statutory version of comparative negligence in 1913. Section 25-1151, R. R. S. 1943, provides: "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

This court has consistently held that the test the statute provides is not based upon any absolute degree of negligence but rather upon a comparative test of the relative negligence of the parties. In Johnson v. Roueche, 188 Neb. 716, 199 N. W. 2d 1, this court held that the words "slight" and "gross" as employed in the comparative negligence act of this state are comparative terms. The negligence of the plaintiff or defendant is not to be evaluated as slight, gross, or otherwise, standing alone. The criterion by which the degree of negligence of plaintiff is to be measured is the extent thereof by comparison with the negligence of the defendant.

The defendant relies upon the case of Buick v. Stoehr, 172 Neb. 629, 111 N. W. 2d 391, in support of the contention that defendant is entitled to judgment as a matter of law. That case is readily distinguishable. The two cars involved there met at the crest of a hill on a country graveled road. There was also an intersection at that point. The cars of plaintiff and defendant approached at approximately the same speed, neither of them in excess of any speed limit. The car of the plain-

tiff was substantially on the wrong side of the road while the car of the defendant was substantially on its own side of the road. The defendant saw the plaintiff's car and applied his brakes while the plaintiff did not have time to apply his brakes after he saw the defendant. Under the circumstances of that case, the negligence of the plaintiff was at least equal to if not greater than the negligence of the defendant. This court determined that the plaintiff's negligence "was more than slight as compared to the negligence of the defendant, and that under the evidence presented no other reasonable conclusion could be reached by reasonable minds than that the plaintiff was guilty of contributory negligence more than slight as a matter of law."

While the accident in the Buick case and the accident here were both head-on collisions on a country graveled road, the similarity virtually ends at that point. The nature and extent and quality of the comparative negligence in the two cases is substantially different. In the case before us, the defendant's driver approached and drove over the crest of a hill in the middle of the road and at a speed substantially in excess of the speed limit. At the same moment, the plaintiff was proceeding up the other side of the same hill and some 200 feet from its crest at a speed of 35 miles per hour. At the moment of impact, the rear of plaintiff's car was entirely on his own side of the road while the front of his car was at most approximately a foot and a half over the imaginary centerline. Roughly three-fourths of the plaintiff's car was on his own side of the road and one-fourth on the wrong side of the road. The Tichota car conversely was three-fourths on the wrong side of the road and one-fourth on its own side of the road. The driver of the Tichota car put on his brakes and slid for 140 feet. Using the speed figures at the beginning and end of the skid, as computed by the expert witnesses, a simple mathematical computation demonstrates that it took a little over two seconds for

the Tichota car to skid that 140 feet. It might be said that when he drove over the crest of the hill in the middle of the road at the speed he did, it was already too late to avoid this accident. The plaintiff's apparent failure to see the Tichota car for two seconds was, of course, a failure to keep a proper lookout. Whether the plaintiff could or might have avoided the accident had he been looking ahead during that momentary two-second time interval is speculative. To say the least, it is a matter as to which reasonable minds might draw different conclusions from the evidence.

In making the comparisons required by the statute between the negligence of a plaintiff and of a defendant, there is no flat formula which is applicable. Neither is the comparison limited to an item by item comparison of the kind and degree of negligence involved in specific acts. It seems clear that the process of comparison should measure the disparity between the quantum of the total negligence of a defendant and the quantum of the total negligence of a plaintiff.

It should be noted here that the final provision of the comparative negligence statute requires that "all questions of negligence and contributory negligence shall be for the jury." While that language obviously does not affect the court's right to decide a case as a matter of law, it does emphasize the fact that the determination of questions of negligence and contributory negligence and the comparative measuring of them are basically factual issues which are generally for determination by the jury. As we said in Johnson v. Roueche, 188 Neb. 716, 199 N. W. 2d 1: "The question of the existence of negligence or contributory negligence is for the trier of the facts where different minds may reasonably draw different conclusions from the evidence."

Under the evidence here, reasonable minds might reasonably draw different conclusions from the evidence. We cannot say that the defendant was entitled to a

verdict as a matter of law. The determinations made by the trial court were correct in all respects and the judgment is affirmed.

AFFIRMED.

SMITH, J., participating on briefs.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein because I believe the negligence of the plaintiff was more than slight when compared with the negligence of defendant's driver and a verdict should have been directed for the defendant.

It is undisputed that the collision occurred 140 feet west of the crest of the hill. The undisputed evidence is that both cars were across the centerline at the time of impact. There were 140 feet of skid marks behind the Tichota car, but none behind the car of the plaintiff. Plaintiff and his group were hunting coyotes. It is apparent he was paying no attention to traffic and therefore did not see the skidding Tichota car as he approached the point of the impact. The absence of skid marks and the fact that his car was across the centerline conclusively indicates he was not keeping a proper lookout.

This case is not too different from Buick v. Stoehr (1961), 172 Neb. 629, 111 N. W. 2d 391, where both cars were over the center of the road. In that case we said: "In an action based on negligence to which the comparative negligence rule has application wherein the evidence shows beyond reasonable dispute that the plaintiff's negligence was more than slight in comparison with that of the defendant the action should be dismissed or a verdict directed."