JACK W. HUBER, APPELLEE, v. CORNHUSKER PAVING Co.,
A CORPORATION, ET AL., APPELLANTS.
214 N. W. 2d 269
Filed January 11, 1974. No. 39095.

Stephen A. Davis of Cassem, Tierney, Adams & Henatsch, for appellants.

Ronald K. Parsonage of Burbridge, Burbridge & Parsonage, for appellee.

Heard before SPENCER, SMITH, and NEWTON, JJ, and ZEILINGER and BURKE, District Judges.

BURKE, District Judge.

This is an appeal from a jury verdict awarding plaintiff $20,000 in damages for personal injuries allegedly suffered in consequence of defendants' negligence.

The injuries compensated for were sustained when plaintiff drove his automobile into an excavation or cut made in the highway by the defendants for the purpose of installing a sewer.

The following facts are not in serious dispute.

The accident occurred on September 24, 1970, at approximately 5:30 in the evening just east of the intersection of 120th and Fort Streets in Douglas County. Fort Street is a two-lane highway running east and west and 120th Street intersects Fort Street and runs north and south. The speed limit on Fort Street is 65 miles per hour.

Approximately 1 week prior to the date of the accident the defendants made a cut across Fort Street at a location approximately 10 to 15 feet east of 120th Street. The cut across the pavement measured nearly 8 feet in its east-west dimension, and was 6 to 9 inches deep at the time of the accident.

There were no barricades, signs, or other warning devices on Fort Street within the mile to the west of the cut to warn the traveling public that the highway was dangerous to travel.

Immediately west of the intersection there were 6 sawhorse-type barricades in the ditch facing parallel with Fort Street approximately 10 feet south of the south edge of the Fort Street pavement. Immediately east of the intersection and in close proximity to the west edge of the cut, there were sawhorse-type barricades north and south of Fort Street. The plaintiff estimated the location of the sawhorses to be approximately 8 feet from the edges of the pavement.

The plaintiff was driving east on Fort Street at a speed of 50 miles per hour and was at a point approximately

300 feet west of the intersection when he noticed the saw-horse-type barricades positioned as described above. He testified that he first noticed the cut in the roadbed approximately 20 feet before reaching the intersection or at a distance of 55 to 60 feet. He applied his brakes but his automobile struck the east edge of the cut at a speed estimated at 30 to 35 miles per hour.

A witness who had driven the same road 3 days prior to plaintiff's accident in describing the cut and the pavement testified that: "It all kind of blended together, in together until you got on top of it."

The defendants do not find fault with any of the 42 instructions on the law given by the trial judge to the jury, but argue (1) that there was no evidence by which the jury could find that the defendants violated any duty owed to the plaintiff, and (2) that the plaintiff was guilty of contributory negligence sufficient to bar his recovery as a matter of law.

It is the duty of a contractor, engaged in construction work on a public highway, to erect barricades or signs, or otherwise adequately warn the traveling public if the highway is dangerous to travel. Bruno v. Gunnison Contractors, Inc., 176 Neb. 462, 126 N. W. 2d 477.

As we stated in Sharp v. Chicago, B. & Q. R. R. Co., 110 Neb. 34, 193 N. W. 150: "It is elementary that the public may assume that those who are charged with the maintenance of highways have performed their duty."

A failure to so warn the traveling public is continuing negligence as distinguished from a condition, and if reasonable minds could conclude from the evidence that such negligence proximately caused an accident, then the issue should be submitted to a jury for its determination. Johnson v. Metropolitan Utilities Dist., 176 Neb. 276, 125 N. W. 2d 708.

In Tutsch v. Omaha Structural Steel Works, 110 Neb. 585, 194 N. W. 731, we observed that: "A driver may expect to find obstructions at the side of the road, but can

hardly be called upon to anticipate an unguarded ditch across it."

In sum, under the facts of this case and under the prior decisions of this court, the issue of the primary negligence of the defendants and the issue of the contributory negligence of the plaintiff were properly submitted to the jury for its determination. See, Andelt v. County of Seward, 157 Neb. 527, 60 N. W. 2d 604; Thurow v. Schaeffer, 151 Neb. 651, 38 N. W. 2d 732.

Finally, the defendants argue that the verdict was exorbitant and appears to have been reached under the influence of passion and prejudice, and in disregard of the evidence and controlling rules of law.

In arriving at the amount of the award, prudent jurors could have believed the following testimony from lay and expert witnesses concerning the physical condition of the plaintiff:

That prior to the accident the plaintiff was a healthy male, age 56, and had been active athletically as a golfer and bowler; that he has not golfed or bowled since the date of the accident; that as a result of the accident he suffered soft tissue injuries to his neck and right shoulder which impaired the mobility of both and resulted in a frozen right shoulder; that several months after the accident the plaintiff was experiencing a loss of 60 degrees forward flexion and 70 degrees abduction on his right side when compared to the left; that during the 2-year period from the date of the accident to the date of trial the plaintiff suffered pain whenever movement of the arm reached the limitation of the restriction of the shoulder; that plaintiff was still experiencing difficulty and pain at the time of the trial; and that frozen shoulder patients "not only have pain, but they have a lot of pain because they use their arm and come up against the restrictions in the shoulder" and "sometimes these things take a long time to work out, and sometimes they never completely work out."

Where the recovery is not a mere matter of computation, it will not be interfered with unless so excessive or so grossly inadequate as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury, or unless it appears to have been based on an oversight, mistake, misconception, or misrepresentation, or on a consideration of elements not within the scope of the action. Yount v. Seager, 181 Neb. 665, 150 N. W. 2d 245.

The amount of the award, underpinned by expert medical evidence, resided chiefly within the jury's domain, an area into which we have but limited authority to intrude.

We find that the issue of damages was fairly and properly submitted to the jury and that there is not a soupcon of evidence to indicate that the jurors acted other than in accordance with their oath. The judgment of the District Court is correct and is affirmed.

AFFIRMED.