CAROLYN COLEMAN, APPELLEE, v. THE DIAMOND ENGINEERING COMPANY, APPELLANT.

227 N. W. 2d 841

Filed April 10, 1975. No. 39721.

Kenneth H. Elson, for appellant.

Luebs, Tracy, Dowding, Beltzer & Leininger, for appellee.

Heard before WHITE, C. J., NEWTON, McCOWN, and CLINTON, JJ., and KELLY, District Judge.

CLINTON, J.

This is an action for personal injuries sustained by the plaintiff, Carolyn Coleman, when she drove her Volkswagen automobile into a cut or excavation made by the defendant contractor, The Diamond Engineering Company, in a public street. The plaintiff claimed the defendant was negligent in failing to give adequate warning by means of barricades and other means. The defendant denied negligence and claimed the plaintiff was contributorily negligent so as to bar recovery. The jury rendered a substantial verdict for the plaintiff and the defendant appealed.

The errors claimed on appeal are: (1) The trial court should have granted the defendant's motion for a directed verdict because the undisputed evidence shows, as a matter of law, that the plaintiff was guilty of contributory negligence more than slight when compared to the negligence, if any, of the defendant; and (2) the trial court gave an erroneous instruction which permitted the jury to duplicate elements of injury in determining the amount of damages. We affirm.

There is not much conflict in the evidence. Diamond Engineering was in the process of completing pavement repairs after having some months earlier laid a water main across Webb Road along the north side of Capital Avenue in the northwest part of the city of Grand Island, Nebraska. Webb Road runs north and south and the paved portion thereof is 24 feet wide. Capital Avenue runs east and west and intersects Webb Road.

The excavation in question extended from just west of the centerline of Webb Road to the east edge of the paved portion of Webb Road and a little beyond because the repair extended into the radius of the northeast corner of the intersection where the paved portion of the two streets join. Neither street has any curb or gutter at this point.

The excavation, which was 7 feet in width, had some time before the accident, been emptied of its temporary fill and the cut had, within a very brief time before the accident, been filled with fresh concrete to within an inch or so of the level of the pavement. At the time the accident occurred the concrete had been spread, leveled, and was about to be or was in the process of being trowelled. The fresh cement was about the same color as the paved street surface. On the morning of the accident before the concrete had been poured, there had been a barricade along the south edge of the excavation blocking the northbound lane of traffic. This barricade, however, had been moved to the east to permit defendant-contractor's two workmen more freedom in the use of the long-handled float which was used in the leveling process. It had not thereafter, before the accident, been returned to its original position in front of the cut. The evidence is in conflict as to whether or not this barricade was entirely off Webb Road at the time of the accident or whether it might have somewhat extended for a few feet in front of the east end of the cut. In any event it is clear that it did not block the center of the northbound lane on which the plaintiff was traveling. The plaintiff and certain disinterested witnesses testified it blocked no portion of the cut. It is undisputed that at the west end of the cut, entirely in the southbound lane of traffic and just west of and adjacent to the centerline, was a smaller barricade. However, this barricade was parallel to the centerline of Webb Road, and marked and guarded only the west edge of the cut.

At the time of the accident the plaintiff was traveling north on Webb Road toward the intersection of it with Capital Avenue. The speed limit on Webb Road at that time was 55 miles per hour. On the east side of Webb Road and south of Capital Avenue, at a location not precisely measured by the evidence but probably a block or more from the south edge of Capital Avenue, was a plainly visible warning sign. This consisted of two of the usual diamond-shaped signs, one above the other. On one were the words "one lane traffic"; on the other was the word "slow." On the top was a yellow light. As the plaintiff proceeded north she noted the one way traffic sign and slowed her car. When she came nearer to the intersection a car on Capital Avenue crossed in front of her. She at that time slowed further to 20 to 30 miles per hour and proceeded north.

She testified that there was no barricade across the northbound lane of traffic. She noted the barricade previously described which was just west of the centerline. It can be gathered from her testimony that it reasonably appeared to her that the southbound lane was the closed lane and that the northbound lane was open. She testified that when she got closer she saw the concrete, but that it was then too late to stop before hitting the excavation. The car hit the soft concrete and the north edge of the cut. Plaintiff was thrown against the windshield and the steering wheel and suffered the injuries about which she complains. Her car stopped with the rear wheels in the concrete and the front wheels north of the cut on the pavement.

One of the workmen testified that at the time the accident occurred he was on his hands and knees facing north trowelling the concrete and that the car passed 2 or 3 feet to his left. At the time he was wearing a white hard-top hat and yellow and white safety jacket. The plaintiff testified that she did not notice the workmen. The whereabouts of the second workman is not shown in the evidence.

In an action where the comparative negligence doctrine has application a verdict should not be directed against the plaintiff on the ground of contributory negligence unless it can be said as a matter of law, i.e., that reasonable minds could not differ in deciding that the plaintiff's negligence was more than slight in comparison with that of the defendant. Kirchner v. Gast, 169 Neb. 404, 100 N. W. 2d 65. We have many times said that the measuring of the comparison of negligence of the defendant and the contributory negligence of the plaintiff is ordinarily a factual question for the jury. Niemeyer v. Tichota, 190 Neb. 775, 212 N. W. 2d 557. The evidence in this case is similar in some respects to that in Huber v. Cornhusker Paving Co., 191 Neb. 108, 214 N. W. 2d 269, where the duty of a contractor with reference to the placement of the barriers and other warning signs is discussed. The general law of this state and the ordinances of the city of Grand Island which were in effect at the time the accident occurred required guarding of such excavation by barriers. In Huber v. Cornhusker Paving Co., *supra,* we said: "It is the duty of a contractor, engaged in construction work on a public highway, to erect barricades or signs, or otherwise adequately warn the traveling public if the highway is dangerous to travel." In Tutsch v. Omaha Structural Steel Works, 110 Neb. 585, 194 N. W. 731, which involved a nighttime accident, it was held that a red warning light at the edge of the road could not be said as a matter of law to give warning of a ditch and obstruction in the road.

The jury was properly instructed on the doctrine of contributory and comparative negligence. From the foregoing recital the jury could reasonably have concluded, because of the improper placement of barricades, it appeared to the plaintiff that the northbound lane of traffic was the open lane and that the southbound lane was the closed lane; that the cut was difficult to see until one was close upon it; and that the

plaintiff's speed was not unreasonable under the circumstances. It could further have found that the presence of the workman doing the trowelling gave no real warning because even under his testimony he may have been working on that portion of the concrete which extended into the radius beyond the apparent east edge of the paving of Webb Road. Thus the workman himself could have been off the traveled portion of Webb Road. The jury could, therefore, properly conclude that the negligence, if any, of the plaintiff was slight in comparison with that of the defendant whose negligence it could have found to be gross in comparison. The trial court did not err in submitting the question of contributory negligence to the jury.

We now turn to the question of the claimed error in the damage instruction. The principal injuries suffered by the plaintiff in the accident were to the teeth and inside the mouth. An upper dental plate which she was wearing broke into three parts. Three natural lower front teeth were so badly loosened they had to be extracted and replaced with a bridge.

Instruction No. 12, given by the court, listed five elements of damage and, insofar as pertinent, was as follows: "If you find for plaintiff on the issue of liability, you must then fix the amount of money which will fairly and reasonably compensate plaintiff for any of the following elements of damage proved by a preponderance of the evidence to have proximately resulted from the negligence of the defendant:

"1. Nature and extent of the injury; . . .

"3. Functional loss of ability to bite:

(a) To date; and

(b) Reasonably certain to be experienced in the future. . . ."

Items 2, 4, and 5 pertained respectively to pain and suffering, medical expense, and motor vehicle repairs.

The defendant's argument is that the general language in item 1 is inclusive of the specific disability

described in item 3 and therefore duplicates or overlaps item 1 in part and thus permitted the jury to consider the same elements twice in arriving at the amount of damages. Stated more specifically, the argument is that the nature and extent of the injury includes the loss of the lower teeth and this inherently includes the loss of ability to bite. Defendant acknowledges that instruction No. 12 conforms to NJI Nos. 4.01, 4.02, and 4.03 approved by rule of this court. The pattern jury instructions were adopted after long and diligent work by members of the bench and bar of this state. They were fully and well considered. Nonetheless the defendant urges that the instruction is erroneous and we should at this time correct it by adopting an instruction approved by the Missouri court which states in part: "First, the nature and extent of the bodily injuries; in this regard you may consider:

   (a)   the duration of the injuries (whether temporary or permanent);

   (b)   the physical pain and mental anguish suffered by plaintiff (in the past and which plaintiff is reasonably certain to suffer in the future);

   (c)   plaintiff's disability;

   (d)   plaintiff's disfigurement;

   (e)   the aggravation of any pre-existing ailment or condition; . . . ."

The defendant concedes that if item 3 had simply been included as a subelement under item 1 it would have no quarrel with the instruction. It may be noted that the argument which the defendant makes can also be applied to the pain and suffering element which is covered by NJI No. 4.04. It can even be argued that item (e) of the Missouri instruction duplicates in part items (a), (b), and (c) of that instruction or all of them. The language of almost any instruction can be improved and it is at least arguable that the Missouri statement of the elements of damage would be an improvement over our instructions on the same subject. It seems to

us, however, that there is a difference between the nature and extent of the injury, which includes the loss of the teeth and the associated cuts and bruises, and the disability which followed as a consequence, one element of which was a decrease in the ability to bite. We believe the average jury can recognize this difference as well as we can. We do not see how the jury could have used these instructions to arrive at a monetary duplication of damage and, of course, that is where the prejudice would lie.

We note in passing that item 3 of instruction No. 12 varies from NJI No. 4.03 in that the approved pattern instruction refers to disability in general terms while the instruction given describes a specific disability. It was not necessary, and probably inadvisable, to be specific. This specificity is in fact a limitation, and would in some cases be undesirable or even perhaps erroneous because specificity could exclude consideration of some element of disability. Of course, only the plaintiff could complain about it and she does not. There was no error in the instruction given.

AFFIRMED.