MAY SOUTHERN, APPELLANT, v. WILLIS SHAW FROZEN EXPRESS, INC., A CORPORATION, APPELLEE.

174 N. W. 2d 90

Filed January 30, 1970. No. 37296.

Padley & Dudden, for appellant.

Holtorf, Hansen, Kortum & Kovarik, David C. Nuttleman, and Thomas M. Shanahan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The district court directed a verdict for the defendant in this action for damages arising out of a collision between a truck trailer and a passenger car on a bridge on U.S. Highway No. 30 near Brule, Nebraska, on June 21, 1964. On appeal we affirm the judgment of the district court dismissing the action.

On the issue presented we review the evidence bearing in mind the traditional rule that all conflicts in the evidence must be resolved in favor of the party against whom the verdict was directed and that such party is also entitled to all reasonable inferences to be drawn from such evidence. At the same time we must bear in mind that the question is not whether there is literally no evidence at all but whether there is evidence so reasonably convincing that the jury can properly proceed to find a verdict for the plaintiff producing it, upon whom the burden of proof was imposed. Raff v. Farm Bureau Ins. Co., 181 Neb. 444, 149 N. W. 2d 52.

On June 21, 1964, the defendant's truck was traveling eastward a short distance to the east of Brule, Nebraska. Behind it at some distance was another truck. Plaintiff, driving a 1963 Mercury 4-door passenger sedan, was traveling east at the same time with her husband in the front seat and her daughter and another pasenger in the rear seat. Plaintiff passed the first truck, came back to the south or right side of the road and then engaged in a passing operation of the defendant's truck. Both plaintiff's car and the truck were approaching a bridge 56 feet long and 24 feet wide, and it can be stated with accuracy that the collision occurred between the front end of the truck and the left side and left front of the plaintiff's automobile about 7 feet west of the east end

of the bridge. Except for this basic information all of the evidence consists of the direct evidence and testimony of the defendant's witnesses and the circumstantial evidence supplied by the patrolman testifying as to the skid marks and the other physical facts surrounding the accident. The plaintiff herself testified that she was going 50 to 55 miles per hour when she passed the truck, and she remembers passing the truck and coming over to her right or south side of the road and further than that she remembers nothing. Plaintiff's husband was reading a map in the front seat and adds nothing further to the plaintiff's testimony. The same was true of the two witnesses in the rear seat.

James Pepper was the defendant's driver. The highway was level, paved and dry, and the weather was clear. Pepper testified that the plaintiff, coming from the west after passing his truck, turned to the south to return to the eastbound lane of traffic and in doing so lost control of the automobile; skid marks appeared on the pavement; the right rear side of her automobile hit the southwest corner of the bridge abutment or the warning post; and it then careened over into the north or westbound lane of traffic. Seeing an imminent accident he turned his truck to the left into the north or westbound lane of traffic but was unable to avoid hitting the plaintiff's automobile about 7 feet from the east end of the bridge. The brake or skid marks of plaintiff's automobile continued on to the point where the automobile came to rest about 60 feet east of the bridge in the right ditch of the highway. Defendant's truck after the collision continued on to the east, was thrown out of control, and also wound up in the right ditch of the highway about 110 feet from the east edge of the bridge, where it was on fire. The truck driver immediately to the rear of defendant's truck testified that as defendant's truck moved to the left into the westbound lane of traffic, he observed the plaintiff's automobile careening and the right rear hitting the southwest edge

of the bridge abutment and the vehicle being thrown over or turning into the westbound lane of U.S. Highway No. 30.

The above testimony is undisputed and uncontradicted. The patrolman's testimony is also undisputed and uncontradicted. He testified as to the identification of the various skid and brake marks. Because of the width and the narrowness of the tracks, the skid marks of the plaintiff's vehicle were rather easily identified. They began 88 feet west of the bridge abutment and continued on to where there were "jagged" marks and a pile of debris about 7 feet from the east edge of the bridge, and then continued on to the point where the plaintiff's car came to rest. Another set of skid marks of the plaintiff's car began at a point about 37 feet west of the west end of the bridge and continued on to the place where the "jagged" marks were made, indicating an abrupt movement on the pavement close to the point where the debris was located. Pictures in evidence show extensive damage, with both doors on the *left* side of the plaintiff's vehicle being wrenched off. On the other hand, the rear bumper, tail lights, and trunk compartment show little if any damage, with the license fixture remaining untouched. A portion on the extreme right side of the bumper is pulled or bent upwards. The right rear fender shows very extensive damage on the side but does not appear to be pushed or bent in from the back. Heavy *scrape* marks appear a foot or two forward from the rear of the right rear bumper. The patrolman testified as to paint and scrape marks on the right rear corner panel of the plaintiff's car and this paint matched that found on the wooden reflector post at the southwest corner of the bridge abutment. The brake marks of the truck showing the application of the brakes just before the entrance to the bridge, and their veering to the left, corroborate accurately the version of the accident of defendant's driver. One further important fact testified to by the plaintiff herself should be men-

tioned. Plaintiff testified that she successfully completed the passing operation prior to the time of the entry to the bridge and returned to the right or south lane of traffic and at that time the defendant's truck was about four car lengths behind her.

Plaintiff's theory of the accident, in order to support the conclusion that she was entitled to go to the jury, is that the jury could reasonably find from all of this evidence the plaintiff passed the defendant's truck, got back into her right lane, and then in approaching the bridge the defendant's driver, in an attempt to pass the plaintiff, struck the left rear corner of her car, forcing the right rear fender to the guard rail post, and the car then careened and spun across the bridge to be struck broadside about 7 feet from the east end of the bridge, which in turn forced it into the ditch on the right side of the road.

We come to the conclusion that this theory of the accident is mere speculation and by maximum reach could only be considered as a mere possibility. In evaluating evidence for the purposes of a directed verdict this court has recently stated that conjecture, speculation, or a choice of quantitative possibilities are not proof. There must be something to be *reasonably* adduced from all of the evidence which would lead a reasoning mind to one conclusion rather than another. Popken v. Farmers Mutual Home Ins. Co., 180 Neb. 250, 142 N. W. 2d 309. We have held that the competent, relevant testimony of unimpeached witnesses should not be held to be contradicted by inferences from circumstantial evidence, unless the circumstances and the natural inferences to be deduced therefrom cannot in reason be reconciled with the conclusion that the direct evidence is true. Bixby v. Ayers, 139 Neb. 652, 298 N. W. 533.

The undisputed, uncontradicted direct testimony is that the plaintiff lost control of her automobile at some distance ahead of the defendant's truck and struck the reflector post or the southwest corner of the bridge.

Considering a minimum of reaction time, the plaintiff must have started to apply her brakes some place between 100 and 150 feet to the west of the west entrance to the bridge. This not only corroborates the testimony of defendant's driver and his supporting witness but we feel that it is almost conclusive as a physical fact that the plaintiff had lost or was losing control of her automobile from that point to the west end of the bridge. There are no marks on the left rear bumper of the plaintiff's vehicle that would corroborate the theory or possibility advanced by the plaintiff's counsel. Plaintiff has the burden of proof in this action, and it is her duty to affirmatively demonstrate a reasonable inference that would support this theory as to how the accident happened. Without analyzing this theory further we come to the conclusion that this is proof of mere speculative possibility and is far short of physical facts and evidence which lead to a reasonable inference that the accident must have happened in the manner proposed by the plaintiff herein.

Approaching the problem from the standpoint of an affirmative analysis of the evidence with relation to the specific allegations of negligence in the plaintiff's petition, we have no doubt as to the conclusion to be reached in this case. We find no evidence which was produced, either direct or circumstantial, that would indicate that the defendant's truck was not being kept under proper control at any time prior to the accident.

Plaintiff's second allegation of negligence is that the defendant's driver operated his truck too close behind the plaintiff's vehicle. But the plaintiff herself testified that she turned in front of the defendant's truck and at that point was about four car lengths ahead of it. It is obvious under the undisputed and uncontradicted evidence that the nearness of the defendant's truck to the plaintiff's vehicle was solely the result of plaintiff having passed it just prior to reaching the bridge. There is no evidence of any nature whatsoever

that defendant's driver speeded up after the plaintiff passed him. Again there is no evidence that the defendant's driver failed to keep a proper lookout for traffic in front of him. On the contrary as far as the actions of defendant's driver are concerned the evidence and the brake marks demonstrate that upon seeing the plaintiff losing control of her vehicle he attempted to take evasive action to avoid striking the vehicle by turning to the left, but he was unable to avoid the vehicle when it careened across the bridge into his lane of traffic.

Plaintiff alleges negligence in the failure of defendant's driver to stop before colliding with plaintiff's vehicle. Failing to stop, of course, is not negligence per se, especially in light of the undisputed evidence that this accident occurred either during or immediately after a passing operation by the plaintiff's vehicle. Again the allegation of the failure of the defendant's driver to turn left to avoid the accident fails because this, in itself, fails to raise an inference of negligence. Furthermore the evidence conclusively shows that the defendant's driver did turn to the left in order to avoid the accident. There is no evidence as to an unlawful or an excessive rate of speed by the defendant's driver. The only evidence is the speed the plaintiff testified she was traveling— about 50 or 55 miles per hour when she passed the truck.

Summarizing, an analysis of the evidence in this case reveals no evidence from which a reasonable inference could be affirmatively drawn that the plaintiff had met her burden of proof of establishing any act of negligence on the part of the defendant's driver, James Pepper. On the other hand, all of the reasonable inferences to be drawn from the physical facts and the undisputed and uncontradicted testimony of the witnesses is that the proximate cause of this accident was the loss of control by the plaintiff driver after or during the completion of the passing operation of the defendant's truck.

The judgment of the district court is correct and is affirmed.

AFFIRMED.