RICHARD FANGMEYER, APPELLEE, V. MARK REINWALD
ET AL., APPELLANTS.

263 N. W. 2d 428

Filed February 22, 1978.   No. 41127.

Leonard J. Germer and Baylor, Evnen, Baylor, Curtis & Grimit, for appellants.

Leroy P. Shuster, Richard L. Schmeling, and William R. Thierstein, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

In an amended petition filed in the District Court for Thayer County, Richard Fangmeyer, plaintiff and appellee herein, alleged that he and his wife had suffered personal injuries and property damage as a result of a motor vehicle collision caused by the negligence of defendant Mark Reinwald. Henry Virus was also named as a defendant on the grounds that he and Reinwald were engaged in a joint farming venture; that the pickup truck driven by Reinwald when the accident occurred was owned by Virus and used in the joint farming venture; that Reinwald was conducting farm business at the time of the accident; and that Reinwald's negligence could be imputed to Virus. Fangmeyer prayed for general and special damages.

In their answer, defendants admitted the occurrence of an accident involving the vehicles operated by Reinwald and Fangmeyer, but denied the allegations of negligence and imputed negligence, and alleged that the accident was proximately caused or contributed to in a degree more than slight by the negligence of Fangmeyer.

Trial before a jury commenced on June 3, 1976. The trial court determined as a matter of law that Fangmeyer was not negligent, and so instructed the jury. The court did not submit the issue of contribu-

tory negligence to the jury, but did submit the issue of imputed negligence in regard to persons engaged in a joint venture, overruling defendant Virus' motion for a directed verdict on that issue. The jury returned a verdict in favor of Fangmeyer against both defendants, and awarded him $47,958 in damages.

In support of motions for new trial, defendants presented affidavits of jurors indicating that one juror, contrary to the trial court's instructions, had told the other jurors of his personal knowledge of the accident site during deliberations. The trial court overruled the motions for new trial, and also overruled defendants' motions for judgment notwithstanding the verdict.

Defendants have now appealed to this court, contending that the District Court erred (1) in failing to submit to the jury the issue of contributory negligence on the part of Fangmeyer and in instructing the jury that Fangmeyer was not negligent as a matter of law; (2) in submitting to the jury the issue of imputed negligence in regard to persons engaged in a joint venture and overruling defendant Virus' motion for a directed verdict on that issue; (3) in overruling defendant Virus' motion for judgment notwithstanding the verdict; and (4) in overruling defendant Reinwald's motion for a new trial.

We first discuss whether the trial court erred in holding that Fangmeyer was not negligent as a matter of law. The evidence adduced at trial in regard to that issue was as follows. On October 4, 1969, at approximately 9 a.m., pickup trucks driven by Fangmeyer and Reinwald collided on a gravel road, known as Stoddard Road, in Thayer County. Fangmeyer was traveling east, Reinwald was traveling west, and it was a head-on collision. The accident occurred approximately 35 to 40 yards east of a crest of a hill. Stoddard Road was approximately 20 to 24 feet wide at the accident site, and the pickup trucks

of the parties were each 80 inches wide. Several witnesses testified that the road was relatively flat where the accident occurred, although they acknowledged that the road may have sloped slightly to the south. Reinwald stated that the road definitely sloped to the south.

Fangmeyer testified that as he came over the crest of the hill, at a speed of 30 miles per hour, he saw Reinwald approaching him on the wrong side of the road. Fangmeyer stated that the closer he came to Reinwald, the further he drove over to the right side of his lane, and that he had slowed almost to a stop when the Reinwald vehicle collided head-on with his truck. Fangmeyer stated that his right front wheel was off the road when the collision occurred, and that he was on his side of the road at all times.

Witnesses for Fangmeyer testified as to the location of the trucks after the collision. Their testimony, supported by a photograph and diagrams, indicated that the Fangmeyer vehicle was on the south side of the road at an angle, its right front wheel on, or just off, the edge of the road. The Reinwald vehicle, according to those witnesses, was also on the south side of the road, facing toward the southwest. There were skid marks behind both vehicles, but testimony in regard to these marks was not dispositive as to the precise location of impact, nor was the evidence clear as to whether the trucks slid to the south after the impact. Photographs of the trucks indicated that the place of impact on Fangmeyer's vehicle was in the area of the left headlight, while the place of impact on Reinwald's vehicle was the center of the hood and grill. One witness testified that he saw antifreeze or fluid on the south side of the road, although he could not state the precise location of the fluid.

Reinwald testified that he was traveling at a speed of about 40 miles per hour immediately prior to the

accident. He stated that he was hugging the center of the road, and saw Fangmeyer's truck as it came over the hill, right "in front of" him. Reinwald stated that Fangmeyer was "more in the center of the road," right in front of his truck. Reinwald immediately applied his brakes and cramped his wheels to the north. He could not remember sliding on the gravel, but thought he could have done so.

As previously stated, the trial court refused to submit the issue of contributory negligence on the part of Fangmeyer to the jury, and instructed the jury as follows: "The court has determined as a matter of law that the plaintiff was not negligent in the operation of his vehicle as respects the collision involved in this case and you must accept such determination by the court."

Several principles in regard to a trial court holding a party to be negligent or not negligent as a matter of law are well-established in this state. "In every case, before an issue may be submitted to a jury, there is a preliminary question for the court, not whether there is literally no evidence, but whether there is sufficient evidence upon which a jury can properly proceed to find a verdict for the party upon whom the burden is imposed." Jensen v. Shadegg, 198 Neb. 139, 251 N. W. 2d 880 (1977). If the defendant pleads that the plaintiff was guilty of contributory negligence, the burden is upon him to prove that defense. Oberhelman v. Blount, 196 Neb. 42, 241 N. W. 2d 355 (1976); Giebelman v. Vap, 176 Neb. 452, 126 N. W. 2d 673 (1964). If there is no competent evidence to support a defendant's plea of contributory negligence, it is prejudicial error to submit that issue and the issue of comparative negligence to the jury. Oberhelman v. Blount, *supra*; Giebelman v. Vap, *supra*. It is clear, however, that the question of the existence of negligence or contributory negligence is for the trier of fact whenever different minds may reasonably draw different conclusions

from the evidence, and a directed verdict is proper only when reasonable minds cannot differ. Jensen v. Hawkins Constr. Co., 193 Neb. 220, 226 N. W. 2d 346 (1975); Oberhelman v. Blount, *supra*; Treffer v. Seevers, 195 Neb. 114, 237 N. W. 2d 114 (1975); Neimeyer v. Tichota, 190 Neb. 775, 212 N. W. 2d 557 (1973); Schmidt v. Orton, 190 Neb. 257, 207 N. W. 2d 390 (1973). It is only when the facts are conceded, undisputed, or are such that reasonable minds can draw but one conclusion therefrom that the trial court must decide the question as a matter of law and not submit it to the jury. Huskinson v. Vanderheiden, 197 Neb. 739, 251 N. W. 2d 144 (1977). Finally: "A motion for a directed verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence." Jensen v. Shadegg, *supra*. See, also, Waegli v. Caterpillar Tractor Co., 197 Neb. 824, 251 N. W. 2d 370 (1977); Laux v. Robinson, 195 Neb. 601, 239 N. W. 2d 786 (1976); Treffer v. Seevers, *supra*. If there is any evidence which will sustain a finding for the litigant having the burden of proof in a cause, the trial court may not disregard it and decide the case as a matter of law. Ripp v. Riesland, 170 Neb. 631, 104 N. W. 2d 246 (1960).

Under the above principles, it is a general rule that where the two parties involved in an automobile accident give conflicting versions of how the accident occurred, the questions of negligence and contributory negligence must be submitted to the jury. It is also the rule, however, that where the undisputed physical facts demonstrate that a party was not negligent in the operation of his automobile at the time of a collision, the evidence is not sufficient to support a verdict for the other party; and where

the evidence essential to recovery by a party is clearly disproved by the physical facts and conditions, the trial court should direct a verdict against him. See, Miller v. Arends, 191 Neb. 494, 215 N. W. 2d 891 (1974); Buick v. Stoehr, 172 Neb. 629, 111 N. W. 2d 391 (1961); Hessler v. Bellamy, 128 Neb. 571, 259 N. W. 514 (1935); Elwood v. Schlank, 126 Neb. 213, 252 N. W. 828 (1934). As stated in Southwell v. DeBoer, 163 Neb. 646, 80 N. W. 2d 877 (1957): "* * * where contributory negligence is charged against a plaintiff but the physical facts disclose conclusively that he was not so guilty it is error for the court to submit that question as an issue to the jury." The physical facts, however, must "indisputably demonstrate" that the collision out of which the cause of action arose was not caused by the party charged with negligence or contributory negligence before a verdict should be directed in favor of that party. Meyer v. Lang, 187 Neb. 202, 188 N. W. 2d 692 (1971); Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766 (1944). See, also, Lord v. Wilkerson, 542 F. 2d 1034 (8th Cir., 1976). The physical facts relied on by this court in the above cases included location of the vehicles after the collision, skid marks, location of antifreeze spots on the road after the collision, location of debris after the collision, and point of impact on the vehicles.

In the present case, it is clear that there is a conflict between the testimony of the parties as to whether Fangmeyer was on his side of the road shortly before and at the time of the collision. Fangmeyer stated that he was on his side of the road at all times, and that he drove further to the right side of the road as his vehicle approached Reinwald's truck. Reinwald testified that when Fangmeyer's truck appeared over the crest of the hill it was more in the center of the road, and that it was right in front of his vehicle, which was hugging the center of the road. Reinwald stated that both he and Fangmeyer were hugging

the center of the road as the two trucks approached each other.

In an attempt to minimize the significance of Reinwald's testimony, Fangmeyer argued that Reinwald was vague as to the point of impact, and that he placed Fangmeyer in the middle of the road only before, and not at the time of, the collision. In so arguing, he relies on the rule that the facts and circumstances proven, together with the reasonable inferences that may be drawn from them, must indicate with "reasonable certainty" the negligent act complained of in the cause of action. See, Vietz v. Texaco, Inc., 189 Neb. 514, 203 N. W. 2d 513 (1973); Barry v. Dvorak, 176 Neb. 375, 126 N. W. 2d 226 (1964); Southern v. Willis Shaw Frozen Express, Inc., 185 Neb. 117, 174 N. W. 2d 90 (1970). Fangmeyer's reliance on this rule is not persuasive in this case. The reasonable, and only, inference to be drawn from Reinwald's testimony is that both he and Fangmeyer were hugging the center of the road at the time of the collision. Reinwald stated that he immediately cramped his wheels to the north (his right side of the road) upon seeing Fangmeyer's truck. In light of the fact that the drivers of the trucks came within each other's vision 35 to 40 yards from the point of collision, a distance permitting very limited reaction time considering the combined speed of the trucks of approximately 70 miles per hour, a reasonable interpretation of Reinwald's testimony is that both parties were hugging the center of the road at the time of the collision, since Reinwald placed Fangmeyer in the center of the road as Fangmeyer came over the hill.

In light of the fact that the testimony of the parties was conflicting, the ruling of the trial court that Fangmeyer was not negligent as a matter of law can only be sustained if the physical evidence "indisputedly demonstrates" that Fangmeyer was not negligent. Meyer v. Lang, *supra*. The physical

facts in this case consist of skid marks, location of the vehicles after impact, location of antifreeze spots on the south side of the road, and point of impact on the vehicles. The skid marks are not conclusive, as the sheriff who observed them and measured them was unsure which tires on the vehicles caused the marks. Although the skid marks were on the south side of the road, if the skid mark behind Fangmeyer's vehicle was made by his right tires, his vehicle would have been hugging the center of the road. Although it would appear that two skid marks would have been made, one by each wheel, there was no evidence on this point.

The location of the antifreeze spots is also not dispositive, as the witness who observed them could not pinpoint their location on the road, and it can not be assumed that they indicate the point of collision rather than a point where the trucks rested after the collision. The point of impact on the vehicles would also not appear to be conclusive as to where the collision occurred, as both vehicles could have been struck in the front, in the same manner as they were, if Fangmeyer was hugging the center of the road.

The physical fact which most strongly suggests that Fangmeyer was on his own side of the road when the collision occurred is the location of the trucks after the collision. It appears from a photograph taken after the accident that both trucks were on the south side of the road. Although Reinwald's truck may have been moved slightly before the photograph was taken, the Fangmeyer vehicle was not moved. The Fangmeyer truck rested at an angle to the southeast, its right front wheel on the edge of the road, and its rear near the center of the road. The Reinwald truck rested at an angle to the southwest.

Although the photograph and the testimony in reference to it suggest that Fangmeyer was on his side

of the road at the time of the collision, they do not "indisputedly demonstrate" that fact. It should be noted that the rear of Fangmeyer's truck rested at the center of the road. It is certainly possible to conclude that the collision occurred at the center of the road; and that the force of impact, since Reinwald was traveling at a faster rate of speed than Fangmeyer, drove the front end of the Fangmeyer vehicle to the south side of the road. The point of impact on the trucks is indicative that the front of Fangmeyer's vehicle would be driven to the south, while the rear would not. Furthermore, if Fangmeyer, as he testified, was already on the shoulder of the road at the time of impact, it is unlikely that his truck would have rested in the position it did, as depicted in the photograph.

Although the facts presented by Fangmeyer are possible of interpretation as indicating that he was on the right side of the road at the time of the collision, the physical evidence does not indisputedly demonstrate that he was. We note that the jury, after being instructed that Fangmeyer was not negligent as a matter of law, returned to the court to ask "how and why has the court determined (Fangmeyer's) non-negligence?". Apparently the facts adduced at trial were not so conclusive as to make the jury believe that there was clearly no negligence on the part of Fangmeyer, as it was confused as to how the court determined that Fangmeyer was not negligent. It would appear that the issue of contributory negligence on the part of Fangmeyer should have been submitted to the jury, as different minds could reasonably draw different conclusions from the evidence. Jensen v. Hawkins Constr. Co., *supra*. Although the issue is a close one, we must conclude that the trial court erred in holding Fangmeyer not negligent as a matter of law because there was a conflict in the testimony of the parties, and the phys-

ical facts do not indisputedly demonstrate that there was no negligence on the part of Fangmeyer.

We turn now to defendant Virus' contention that the evidence was insufficient to submit to the jury the issue of imputed negligence in regard to persons engaged in a joint venture, and that the claims against him should have been dismissed. The evidence relevant to this issue was as follows. Reinwald has worked on Virus' farm since he was 13 years old, at which time he went to live with the Viruses because his parents were unable to take care of him. Although not legally adopted by Virus, Reinwald regarded him as his father. Reinwald and Virus reached an unwritten agreement in regard to farming, and this agreement has continued for at least 10 years. Reinwald has received one-third of the crops grown on the farm, while Virus has received two-thirds. Both worked full time on the farm, and Reinwald has continued to live on the Virus farm since his marriage.

Virus owns almost all the equipment used on the farm, although Reinwald owns two or three machines. Virus bears all expenses such as fertilizer and seed. Although Virus generally makes decisions in regard to the farming operation, Reinwald makes some decisions on his own, and both confer on farming matters. Each owns his own animals on the farm and owns his own feed, although the feed is stored in a common bin. They have never established a formal partnership, and each has filed separate tax returns. It was stipulated that there are no assets or property held under a joint enterprise or partnership between the defendants. Reinwald stated that he was a tenant and sharecropper.

The truck driven by Reinwald on the day of the accident was owned by Virus at that time. Reinwald had previously owned an interest in the truck, but sold his interest to Virus in the spring of 1969, when Reinwald purchased his own truck. Reinwald

usually used his own truck when farming, but the Virus truck was available for his use whenever he needed it for farming purposes. He did not need Virus' permission to use the truck, but usually told Virus if he was going to use it. Reinwald's own truck was available on the day of the accident, but he used the Virus truck because it got better gas mileage.

On the morning of the day of the accident, Reinwald and Virus agreed that Reinwald should go to the farm of Virus' brother to make arrangements for shelling corn, and then go to Deshler to inquire about repair on a tractor which was used for farming purposes. Reinwald was on his way to Deshler to inquire about the tractor when the accident occurred.

The leading Nebraska case on what constitutes a joint venture is Soulek v. City of Omaha, 140 Neb. 151, 299 N. W. 368 (1941), in which this court stated that: "* * * to constitute the relationship there must be an agreement to enter into an undertaking in the objects of which the parties have a community of interest and a common purpose in performance, and each of the parties must have equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other." The relationship of joint venturers depends largely upon the intent of the alleged parties as manifested from the facts and circumstances involved in each particular case. The mere pooling of property, money, assets, skill, or knowledge does not create the relationship; there must be something more than mere sharing of profits, some active participation in the enterprise, and some control of the subject matter thereof or property engaged therein. "Each member of a joint adventure has a dual status — that of principal for himself, and as an agent for the others." Soulek v. City of Omaha, *supra*. See, also, Frisch v. Svoboda,

182 Neb. 825, 157 N. W. 2d 774 (1968); Gardner v. Kothe, 172 Neb. 364, 109 N. W. 2d 405 (1961); Carey v. Humphries, 171 Neb. 578, 107 N. W. 2d 20 (1961); Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59 (1957).

The jury in this case was instructed in regard to the. issue of joint venture under NJI No. 6.40, which follows the language of Soulek v. City of Omaha, *supra*, quoted above. It should be noted that this instruction is a general one, and that the Nebraska Jury Instructions do not reflect the distinction between a "joint enterprise" (an association of persons for social or other nonbusiness purposes) and a "joint adventure" or "joint venture" (an association of persons for business purposes). See 46 Am. Jur. 2d, Joint Ventures, § 1, pp. 21, 22. Although an instruction on joint ventures could, and perhaps should, be more precise in cases such as the present one, where an alleged joint business venture is involved, Virus does not contend that the instruction was erroneous, but contends that the evidence showed as a matter of law that he was not engaged in a joint venture with Reinwald. The rules in regard to directed verdicts have already been set forth in this opinion. See Jensen v. Shadegg, *supra*.

The relationship between Reinwald and Virus is admittedly difficult to characterize. There can be no doubt the evidence was sufficient to permit the jury to find that the two entered into an agreement with respect to farming, and that they had a common purpose and a community of interest. Virus contends, however, that the evidence did not show they had an equal right to control the manner of performance of the undertaking. Although there was evidence that it was Virus who made the decisions in regard to the farming operation, there was also evidence that Reinwald made decisions, and that the two defendants conferred when making decisions. Under the circumstances of this case, where the informal relationship between two persons involved in

a business operation makes it difficult to character-
ize the relationship, we believe that a question of
fact was raised in regard to the right of each person
to control the manner of performance of the under-
taking. Although the facts of this case indicate that
the relationship between the defendants could prop-
erly have been found to be that of employee and em-
ployer, or landowner and sharecropper, we do not
believe that it can be said as a matter of law that the
relationship did not constitute a joint venture. The
testimony of Reinwald was conflicting as to how
much control he had over the performance of the un-
dertaking, and the inferences to be drawn from his
testimony were for the determination of the jury.
Therefore, it was not error for the trial court to sub-
mit the issue regarding a joint venture to the jury.

In light of the conclusions reached, we need not
consider Reinwald's contention that a new trial is re-
quired because one of the jurors, during delibera-
tions, told the other jurors of his personal knowledge
of the accident site, as we have already determined
that Reinwald is entitled to a new trial on the issues
of negligence and contributory negligence.

REVERSED AND REMANDED FOR PROCEEDINGS NOT
INCONSISTENT WITH THIS OPINION.

BOSLAUGH, J., dissenting in part.

There is a preliminary question for the court to de-
cide before submitting any issue to the jury; not
whether there is literally no evidence, but whether
there is sufficient evidence to support a finding on
that issue in favor of the party who has the burden of
proof.

The only specification of contributory negligence
that was of any importance in this case was the de-
fendants' allegation that the plaintiff was on the
wrong side of the road. Although there was some
evidence to that effect, there was no substantial evi-
dence to support that allegation.

The plaintiff's testimony was corroborated by the

physical facts which strongly indicated the impact occurred on the south side of the road. Defendant Reinwald's testimony that he was "hugging the center of the road" when he saw the plaintiff "right in front of him," and that the plaintiff "was more in the center of the road" was, in my opinion, not sufficient to overcome the evidence as to skid marks, the damage to the vehicles, and where they came to rest after the accident. When the evidence is considered as a whole, it seems to me there was no substantial evidence upon which the jury could have found that the plaintiff caused the accident in part by driving on the wrong side of the road.

SPENCER, J., dissenting in part, and concurring in part.

I dissent from that portion of the opinion which holds that the evidence presented a jury question as to the contributory negligence of the plaintiff, for the reason set out by Judge Boslaugh in his dissenting opinion.

I concur in that portion of the opinion which holds that the question of the imputation of negligence to the defendant Virus was for determination by the jury. This was no ordinary landlord and tenant relationship. The Viruses had been interested in Reinwald for many years, and considered him as a foster son. They farmed together, each devoting full time to the operation. They combined their assets with one furnishing the land and a major portion of the farm equipment and operating expenses, and the other the remaining portion of the farm equipment and operating expenses. They consulted one another about the operation of the farm and divided the crops according to an agreed formula. At the time in question, Reinwald was using the automobile owned by Virus on their joint business.

McCOWN, J., concurring in part, and dissenting in part.

In concur in that portion of the majority opinion

which holds that the evidence presented a jury question as to the contributory negligence of the plaintiff.

I dissent from that portion of the majority opinion which holds that there was sufficient evidence of a joint venture between Reinwald and Virus to submit the issue of joint venture to the jury and thus permit the jury to impute the negligence of Reinwald to Virus.

The majority opinion concedes that the relationship of joint venturers depends largely upon the intent of the parties to the alleged venture. The undisputed evidence in this case was that Reinwald was a sharecropper tenant who lived on the farm and received one-third of the crops. Virus owned virtually all the equipment and bore all the expenses and both parties contributed labor. Each also had separate individual livestock operations on the farm. There was clearly no true sharing of profits or losses, but only a sharing of the crops.

The majority opinion concedes that in a joint venture each of the parties must have *equal* voice in performance and control of the operation and that there must be at least a sharing of profits. See Soulek v. City of Omaha, 140 Neb. 151, 299 N. W. 368. Other jurisdictions generally include the concept of losses as well as profits among the requirements of a joint venture. See, Vern Shutte & Sons v. Broadbent, 24 Utah 2d 415, 473 P. 2d 885; Hayes v. Killinger, 235 Ore. 465, 385 P. 2d 747.

I have found no case which holds that an ordinary crop share farm lease constitutes a joint venture. In 46 Am. Jur. 2d, Joint Ventures, § 19, p. 41, it is stated: "A contract which is nothing more than a lease of premises for rent payable in a share of the crops does not establish a joint venture. On the other hand, an agreement for carrying on farming operations which provides for a sharing of the expenses and of the profits is generally regarded as creating a joint venture." The parties to the in-

formal oral agreement here, Reinwald and Virus, intended a share crop lease arrangement. The fact that it was informal was not unusual in view of the close relationship of the parties, which was almost that of father and son.

The majority opinion holds that where the informal arrangement for a farm operation makes it difficult to characterize the relationship as that of an employee and employer, or landowner and share-cropper, or as joint venturers, the jury may be permitted to determine whether there was a joint venture in spite of the fact that the parties did not intend it and the evidence does not support it. The only factual dispute of any sort as to the arrangement here was as to the extent or right of control of the farm operations as between Reinwald and Virus. The parties simply handled that by agreement. The right of control was not equal but it was not spelled out because there was no formal agreement. The evidence was insufficient to submit the issue of joint venture to the jury as a matter of law.

I have found no case holding that a landlord and tenant under a crop share lease are engaged in a joint venture and each vicariously liable for the negligence of the other in operating an automobile on any errand connected with the farm operation. Hundreds of farm families in Nebraska have similar informal arrangements of various kinds based on crop shares. This case is the first one to permit the extension of the doctrine of imputed negligence to such operations.

CLINTON, J., joins in concurring in part and dissenting in part.