NOLAN L. POPPE, SPECIAL ADMINISTRATOR OF THE ESTATE OF TODD NOLAN POPPE, DECEASED, APPELLANT, V. DONALD R. PETERSEN, APPELLEE.

381 N.W.2d 534

Filed February 14, 1986.   No. 84-758.

Robert F. Peterson of Venteicher, Laughlin, Peterson & Lang, and Patrick J. Birmingham, for appellant.

Robert D. Mullin, Jr., of Boland, Mullin & Walsh, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

This is an action for personal injuries and wrongful death brought by Nolan L. Poppe as special administrator of the estate of Todd Nolan Poppe, deceased. The plaintiff's decedent died as the result of injuries sustained in an automobile accident on June 21, 1981.

At the time of the accident the plaintiff's decedent was a passenger in an automobile operated by Kurt Lamprecht. The accident occurred when the Lamprecht vehicle collided with an automobile operated by the defendant, Donald R. Petersen. The action was dismissed as to the other defendants before the case was submitted to the jury.

The jury returned a verdict for the defendant, Petersen, and the plaintiff has appealed. The plaintiff contends the trial court erred in failing to sustain the plaintiff's motion for a directed verdict on liability and in receiving evidence as to the results of blood alcohol tests performed upon the drivers involved in the accident.

The accident occurred at about 12:20 a.m. on an unpaved county road northwest of Bloomfield, Nebraska, just east of the crest of a hill. The Lamprecht vehicle was proceeding in a westerly direction; the Petersen vehicle in an easterly direction.

The accident occurred when the left front ends of the two vehicles collided head on.

At the time of the collision the defendant was on his way home alone from a party at an abandoned schoolhouse northwest of Bloomfield, Nebraska. The Lamprecht group was returning to the same party. Driving conditions were normal. Testimony at the trial showed that both drivers had been drinking. The defendant testified to drinking 11 or more beers over a 9-hour period of time. Acquaintances testified that Kurt Lamprecht may have consumed up to 20 beers at the party that night. Blood test results from both drivers were admitted into evidence over the plaintiff's objections.

At the trial both parties called accident reconstruction experts who testified concerning their opinion as to how the accident occurred. The plaintiff's expert witness, Ted Sokol, testified, based on a review of the accident report, photographs of the scene and the vehicles involved, and two visits to the site, that the accident occurred because the eastbound Petersen vehicle was across the centerline of the road at the time the impact occurred.

Relying on similar information, the defendant's expert witness, Richard Large, testified that the westbound Lamprecht vehicle was across the centerline of the road at the time of the impact and caused the accident. Critical to both Sokol's and Large's opinions was their location of a 10-foot-long gouge mark which they agreed was caused by something in the left front part of the Lamprecht vehicle. Both witnesses believed the point of impact was at the east end of the gouge mark. The significance of the location of the mark is that it tends to show the position of the Lamprecht vehicle on the road at the time of the impact. According to Sokol, the gouge mark was north of the centerline; Large thought it was south of the centerline.

The defendant testified that he thought the Lamprecht car was over the centerline at the time of the accident, that his own car was on the right side of the road, and that he had moved as far to the right-hand side as he could safely drive when he saw the oncoming headlights of the Lamprecht vehicle. The surviving passengers in the Lamprecht vehicle who were called

to testify on the plaintiff's behalf had no recollection as to how the accident occurred.

The plaintiff's motion for a directed verdict on liability, made at the close of all of the evidence, was overruled. The jury returned a unanimous verdict for the defendant, and the plaintiff's subsequent motion for a new trial was overruled.

The plaintiff's first assignment of error is that his motion for a directed verdict on liability should have been granted because the undisputed physical evidence at the trial conclusively proved that the defendant's vehicle was across the centerline of the roadway when the collision occurred.

A motion for directed verdict is treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom it is directed. *Floridia v. Farlee*, 201 Neb. 39, 266 N.W.2d 204 (1978).

"Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. Where, however, the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question as a matter of law rather than to submit it to a jury for determination."

*Floridia v. Farlee, supra* at 42, 266 N.W.2d at 206 (quoting *Hoefer v. Marinan*, 195 Neb. 477, 238 N.W.2d 900 (1976)). See, also, *Fangmeyer v. Reinwald*, 200 Neb. 120, 263 N.W.2d 428 (1978).

The existence of negligence or contributory negligence is an issue for the trier of fact in cases where "different minds may reasonably draw different conclusions from the evidence, and a directed verdict is proper only when reasonable minds cannot differ." *Fangmeyer v. Reinwald, supra* at 124-25, 263 N.W.2d at 431. This rule generally applies where two parties to an automobile accident offer conflicting versions as to how the accident occurred. *Fangmeyer v. Reinwald, supra.*

In *Fangmeyer v. Reinwald, supra*, we held that where the cause of an automobile accident in a personal injury case is controverted, the physical facts must "indisputably demonstrate" that the collision was not caused by the party

charged with negligence or contributory negligence before a verdict should be directed in favor of that party. In the present case the defendant alleged that Kurt Lamprecht's negligence was the proximate cause of the collision. The evidence as to the physical facts in this case does not "indisputably demonstrate" which driver was responsible for the collision, if not both.

Some facts were uncontroverted by the reconstruction expert witnesses. They agreed that the traveled portion of the road was 19 feet wide, with the centerline located 9.5 feet from either edge. They also agreed that there was an overlap of over 2 feet on the front end of each vehicle when they collided and that the point of impact was indicated by the east end of the gouge mark caused by some part of the Lamprecht vehicle (in the vicinity of the left front wheel) being forced into the ground after the impact.

The expert witnesses, however, did not agree regarding the location of the gouge mark in relation to the centerline. Because, according to these witnesses, the gouge mark indicated the point of impact, its location in regard to the centerline of the road determined whether the Lamprecht vehicle was left of the centerline at the time of impact. The state patrolman who made an investigation at the scene of the accident that night testified that he determined the gouge mark to be located 9 feet from the north edge of the road. The officer concluded that the gouge mark indicated the approximate point of impact because he found 87 feet of skid marks, attributed to the Lamprecht vehicle, 3 feet from the north shoulder of the road leading up to the gouge mark. The plaintiff's expert witness, Sokol, relying on the patrolman's accident report, also located the gouge mark 9 feet from the north edge of the road. He also believed that a photograph of the accident scene, taken the next day, indicated that the gouge mark was located north of the centerline. Sokol ultimately concluded that the accident occurred as a result of the defendant's eastbound vehicle being over the centerline and that none of the investigating officer's measurements were inconsistent with his, Sokol's, opinion as to how the accident occurred.

On cross-examination Sokol was questioned as to how the skid marks from the Lamprecht vehicle could lead to the gouge

mark 9 feet from the north edge of the road when the width of the car plus the distance from the skid mark to the north edge of the road placed the Lamprecht left front tire at a point 8 feet from the north edge of the road. He explained that he believed the impact had pulled the Lamprecht vehicle a foot to the south.

The defendant's expert witness, Large, based on the patrolman's measurements and an analysis of photographs of the scene, placed the gouge mark at 9 feet from the south edge of the road. He also testified that, by reference to a photograph of the defendant's vehicle taken at the accident scene, the center of the gouge mark may have been only 8 to 8.5 feet from the south edge of the road.

The plaintiff's major contention is that even if the testimony of the defendant's expert witness regarding the location of the gouge mark were accepted as true, the undisputed physical evidence would still conclusively indicate that the defendant's vehicle was over the centerline at the time of impact. He claims that placing the gouge mark at 9 feet from the south edge of the road merely places the Lamprecht vehicle over the centerline by 1 foot, i.e., 6 inches from the centerline to the gouge, then 6 inches for the width of the wheel. Because both expert witnesses testified to a 2-foot overlap of the vehicles when they collided, the plaintiff concludes that the defendant's vehicle still must have been 1 foot over the centerline for the collision to have occurred as described.

The plaintiff's contention requires an assumption that it was the left front wheel of the Lamprecht vehicle that actually caused the gouge mark. The testimony shows that neither expert witness was sure what part of the vehicle in fact made the gouge mark. Sokol, the plaintiff's expert witness, testified that he was unsure whether the wheel, rim, or some part of the frame caused the gouge mark, but he was of the opinion that it was something in the vicinity of the left front wheel.

Large, the defendant's expert witness, similarly testified that the front end, tire, or frame just behind the left front wheel of the Lamprecht vehicle caused the gouge mark. In the diagram illustrating his opinion as to the position of the vehicles at impact, he indicated that the gouge mark may have been as much as a foot to the north of the left front Lamprecht tire.

The evidence was inconclusive as to what portion of the Lamprecht vehicle caused the gouge mark. When taken in the light most favorable to the defendant, the evidence did not clearly establish that the defendant's car was over the centerline at the time of impact.

Further, there was other evidence which tended to support a conclusion that the defendant was on the right side of the road at the time of collision. The defendant testified that he was on the right side of the road at the time of the collision and that the Lamprecht car was to the left of center. The location of the defendant's car after impact and skid marks and postimpact marks leading up to the car as depicted in some of the exhibits could reasonably lead to the conclusion that the defendant's vehicle was to the right of the centerline. There was photographic evidence that most all of the fine debris and glass from the collision were located on the south half of the roadway. The witness Large testified that debris is generally a good indicator of where the accident occurred because the fine material drops once the vehicles collide and part.

The testimony of the defense expert witness, Large, also reasonably served to discredit the plaintiff's version of the accident. The 87 feet of skid marks attributed to the Lamprecht vehicle were said to be inconsistent with marks on its speedometer housing which indicated that the speedometer needle was crushed at between 50 and 60 miles per hour. He also testified that there was nothing to support Sokol's opinion that the gouge mark was a foot south of the Lamprecht skid marks. The cars moved in opposite directions on impact. Large was also critical of Sokol's method of marking the centerline of the road on a photograph so as to indicate that the gouge mark was north of the centerline.

The evidence in this case was such that different minds could reasonably draw differing conclusions regarding the defendant's alleged negligence. The trial court did not err in overruling the plaintiff's motion for a directed verdict.

Next, the plaintiff contends that assuming the case was properly submitted to the jury, the jury's disregard of the material and undisputed physical evidence in the record entitled him to a new trial.

> [A] party [who] has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue . . . has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured.

*Sortino v. Paynter*, 206 Neb. 348, 350, 292 N.W.2d 916, 917 (1980).

This court will not set aside or direct a verdict in cases where the evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide the issues of fact. *Koerner v. Perrella*, 213 Neb. 189, 328 N.W.2d 473 (1982).

A jury verdict will not be disturbed on appeal unless it is clearly wrong. *Koerner v. Perrella, supra.* As previously noted, there was competent evidence from which the jury could reach a verdict in favor of the defendant.

The plaintiff's final assignment of error relates to the admission into evidence of the results of blood tests performed upon both the defendant and Kurt Lamprecht. Craig Horn, the chief chemist of the Nebraska Health Department, was permitted to testify over objection as to the results of blood tests for both drivers. The plaintiff claims that the admission of these results was erroneous because the tests were taken for statistical purposes pursuant to Neb. Rev. Stat. §§ 39-6,104.07 et seq. (Reissue 1984), which required the exclusion of such evidence.

At trial the investigating officer testified that he had requested that a blood sample be taken from both drivers for statistical purposes only. Horn testified, over the plaintiff's objection, that the result of the Petersen blood alcohol test was .064 percent weight per volume ethyl alcohol. He was willing to release this result because his records did not reflect that it was taken for statistical purposes.

Horn further testified that two tests were performed on Kurt Lamprecht's blood, one for statistical purposes and one for law enforcement purposes, because the records showed a fatality accident. He would not release the result from the test taken for statistical purposes but testified that the result from the latter test showed .126 percent weight per volume ethyl alcohol. The

plaintiff did not object to this testimony, but later objected to the admission of exhibits 153 and 154, the former of which contained the test results for both drivers, while the latter contained only the Petersen result.

We need not consider the issue as to whether this evidence was improperly admitted at trial, as there was substantial other properly admitted evidence to establish the drivers' levels of intoxication. Where "properly admitted evidence exists to establish that which improperly admitted evidence also establishes, the error in receiving the inadmissible evidence is not grounds for reversal." *State v. Fix*, 219 Neb. 674, 676, 365 N.W.2d 471, 473 (1985); *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 322, 343 N.W.2d 903, 907 (1984).

Two of Kurt Lamprecht's friends who were with him at the party testified by deposition that Lamprecht may have consumed up to 20 beers on the night of the accident. There was also evidence that he was tonguetied and was having difficulty walking straight. Taken together with testimony that Lamprecht was 5 feet 10 inches to 5 feet 11 inches tall and weighed 165 pounds, the jury could reasonably have determined that Lamprecht was under the influence of alcohol at the time of the accident.

The defendant testified that at the time of the accident he was 5 feet 9 inches tall and weighed 210 pounds. He also testified to drinking 11 beers over a 9-hour period of time and that he was not intoxicated when he left the party just prior to the accident. From this testimony the jury could reasonably have estimated Petersen's level of intoxication at the time of the accident, without the benefit of the blood test results.

The blood test results in this case were merely cumulative evidence of the two drivers' levels of intoxication and, therefore, were not prejudicial to the plaintiff.

There being no error, the judgment of the district court is affirmed.

AFFIRMED.